## STATE EX REL. JOHN JOSEPH DUGAL v. RALPH H. TAHASH.

153 N. W. (2d) 232.

September 29, 1967—No. 40,219.

*C. Paul Jones,* State Public Defender, and *Murray L. Galinson,* Assistant State Public Defender, for appellant.

*Douglas M. Head,* Attorney General, *Gerard W. Snell,* Acting Solicitor General, and *David C. Weinberg,* Special Assistant Attorney General, for respondent, warden of State Prison.

PETERSON, JUSTICE.

Relator was indicted for the crime of rape upon a female of unsound and feeble mind[1] by the Ramsey County grand jury on November 12, 1963, to which he pleaded not guilty.

Before trial, relator moved to suppress certain written confessions obtained from him before he was afforded the assistance of counsel; and he also objected to the competency of the 19-year-old prosecutrix as a witness under Minn. St. 595.02, subd. 6, due to a mental impairment reducing her mental age to that of a 5½-year-old child. Prior to the impaneling of the jury, the trial court examined the prosecutrix as to

---

[1] Minn. St. 617.01, subd. 1.

competency and heard testimony on the motion to suppress the defendant's confession. The court thereupon ruled that the confessions were voluntary and admissible; and it made a provisional ruling that the prosecutrix was a competent witness, expressly reserving the right to change its ruling if the prosecutrix's trial testimony should thereafter reveal incompetency.

Relator thereafter offered, through his attorney, to plead guilty to the crime of indecent assault,[2] whereupon an information charging him with the crime of indecent assault was filed by the state on May 21, 1964, and the indictment for rape was dismissed by the court. Relator pled guilty to the crime of indecent assault, and presentence investigation was ordered. At sentencing the court refused relator's motion to stay execution for the purpose of obtaining further psychiatric evaluation of relator, and he was committed into the custody of the state penitentiary.

Relator petitioned the Washington County District Court for a writ of habeas corpus on the grounds that (1) the trial court erred in ruling that the prosecutrix was competent to testify as a witness even though she was not capable of consenting to the act of sexual intercourse by reason of her feeble-mindedness; (2) the court erred in ruling that relator's confession was voluntary and admissible; (3) relator's plea of guilty was improperly induced by a genuine misapprehension of his legal position as a result of the erroneous rulings of the trial court; and (4) the court abused its discretion in refusing to stay the execution of relator's sentence to allow an independent psychiatric examination of relator, thereby denying relator his right to allocution.

: The writ was denied by the habeas court on the grounds that no error was committed by the trial court, and relator appeals from such denial. We agree with the habeas court and affirm the judgment.

■ Determination of a person's competency as a witness is within the sound discretion of the trial court and is ordinarily made by such preliminary examination of the proposed witness as may be deemed necessary by the court. If it appears from the examination that the witness understands the obligation of an oath and is capable of correctly

---

[2] § 617.08.

narrating the facts to which his testimony relates, the witness is competent in fact and should be permitted to testify.[3]

The trial court, after its examination of the prosecutrix, ruled that she was a competent witness for purposes of giving testimony notwithstanding a feeble-mindedness that precluded her from consenting to sexual intercourse. We see no difficulty or disparity in this ruling inasmuch as a person may be able to recall and relate facts he has observed or experienced even though he does not possess sufficient judgmental capacity to consent to an act such as sexual intercourse. This view was set forth in Cannady v. Lynch, 27 Minn. 435, 436, 8 N. W. 164, where the court stated:

"* * * It is a matter of common observation that persons may be mentally unsound on some subjects, and as to others as sound as people generally; or may be in some degree unsound, or to some extent intoxicated, and yet be capable of recollecting past events accurately, and possess the ability and appreciate the duty to relate them truly, as fully as persons who are sober, and in all respects of sound mind."

The court's examination in this case, as it appears in the record, was not lengthy and consisted, in the main, of questions that sought "yes or no" answers.[4] The examination nevertheless provided a sufficient basis for a determination of the prosecutrix's testimonial competency, both as to her recollection of relevant events and her understanding of the obligation to tell the truth. In view of this record and the trial court's advantage in observing the general demeanor of the witness, we hold that the court did not abuse its discretion in provisionally ruling that the prosecutrix was a competent witness.

■ The trial court correctly ruled that relator's written statements, obtained from him while in the custody of the police without assistance of counsel, were voluntary and admissible in his pending trial. The date of relator's conviction, May 21, 1964, was prior to the United States

---

[3] See, State v. Prokosch, 152 Minn. 86, 187 N. W. 971.

[4] See State v. Levy, 23 Minn. 104, wherein the court allowed the use of similar questions to establish the competency of an 8-year-old witness.

Supreme Court decisions of Escobedo v. Illinois [5] and Miranda v. Arizona,[6] which are not retroactive in application,[7] so the failure of the police to inform relator of the constitutional standards required by these cases [8] does not render the statements inadmissible. The absence of such warnings, however, is a factor to be considered in determining the voluntariness of relator's statements when examining the "total circumstances" surrounding the statements.[9]

The totality of the circumstances in the instant case indicates that relator's confessions were voluntary. Relator was taken into the custody of the Bloomington police at 7:15 a. m. on June 24, 1963, to be questioned about a sexual offense reported to them. Relator was informed of the incident and his reported involvement and, according to the officer, voluntarily agreed to accompany him from relator's St. Paul apartment to the Bloomington station to get the matter "straightened out." The two men arrived at the station at 8 a. m. and relator was interrogated for approximately two hours. Relator was informed by the police officers that he had the right to remain silent, that anything he said could be used against him, and that he had the right to obtain the assistance of counsel.[10]

---

[5] 378 U. S. 478, 84 S. Ct. 1758, 12 L. ed. (2d) 977 (June 22, 1964).

[6] 384 U. S. 436, 86 S. Ct. 1602, 16 L. ed. (2d) 694 (June 13, 1966).

[7] Johnson v. New Jersey, 384 U. S. 719, 86 S. Ct. 1772, 16 L. ed. (2d) 882.

[8] Escobedo holds that the refusal of police to honor an accused's request for consultation with an attorney, when coupled with the failure to effectively warn the accused of his constitutional right to remain silent, is a denial of assistance of counsel and no statement elicited by the police during the interrogation may be used against him at a criminal trial.

Miranda requires that the following warnings be given to an accused before a statement given to the police will be considered voluntary: (1) He has the right to remain silent; (2) any statement he makes may be used as evidence against him; (3) he has the right to the assistance of counsel during the interrogation; and (4) if he cannot afford an attorney he may have one without cost prior to the questioning.

[9] Davis v. North Carolina, 384 U. S. 737, 86 S. Ct. 1761, 16 L. ed. (2d) 895.

[10] Relator testified that he asked permission to call an attorney on two occasions while at the police station and that both requests were denied by the

During the interrogation relator denied involvement in the reported offense and the police suggested that, if relator's contention was true, a polygraph test would be the fastest way to clear him of any implication in the offense. Relator voluntarily agreed to take such a test, but the results were not favorable to him. Relator was told of the results and informed that they were not admissible in court, but he agreed, at this time, to give a statement to the police. A written statement implicating relator in the offense was obtained, and he was then released into the custody of the St. Paul police. The St. Paul officers obtained a second statement [11] from relator and he was then arraigned on the charge of rape. A St. Paul officer testified that relator had, during this prearraignment period, made a telephone call without restriction.

At the hearing on his motion to suppress the statements on the ground of involuntariness, relator called a psychologist who had examined him earlier for the purpose of showing how susceptible relator was to the desire to please an interrogator. While this expert's testimony suggested that relator would be inclined to do whatever the officers wanted him to do, this testimony equally established that relator was a person of normal intelligence who was prone to tell the truth and fully capable of understanding his rights if told of them.

There is no evidence that relator's will was overborne to obtain the statements and relator admitted, in the trial court, that no threats or promises were made to him by the officers who obtained the statements.

---

police. The police officer testified, to the contrary, that he told relator that he had the right to obtain the assistance of counsel and that relator mentioned several times that he should get an attorney but took no step to do so. The trial court resolved this evidentiary conflict by an express finding that relator had been afforded a reasonable opportunity to retain counsel but had chosen not to do so at that time. Apart from the present consideration of its voluntariness this pre-Escobedo statement would not have been inadmissible on the ground implicit in relator's version. State ex rel. Fruhrman v. Tahash, 275 Minn. 242, 146 N. W. (2d) 174.

[11] These officers possessed a copy of relator's original statement and were unable to show any need for the second, but they testified that relator agreed to give the statement even though he was warned it could be used against him in any subsequent proceedings.

We conclude from the record as a whole that relator's statements were the voluntary product of relator's free will and admissible in the criminal proceeding against him.

■ As the trial court correctly ruled on the competency of the prosecutrix as a witness and the admissibility of relator's statements, there is no basis for relator's claim that his plea of guilty was motivated solely by a misapprehension of his legal position as to inadmissible evidence.

■ The right of allocution is an important right,[12] but it does not inherently require a psychiatric evaluation before sentence is imposed. At the time relator's motion for stay of sentence was raised, the court had a psychiatric report supplied by the probation department and the court chose, as it reasonably could, to rely on that report.[13] There was, therefore, no abuse of discretion in the trial court's refusal to stay the execution of sentence so that relator could obtain additional psychiatric evaluation, and there was no denial of his right to allocution.

Affirmed.

---

[12] See, State ex rel. Searles v. Tahash, 271 Minn. 304, 136 N. W. (2d) 70.

[13] Minn. St. 246.43, subd. 1, provides that a defendant convicted of indecent assault *may* be committed to the Commissioner of Public Welfare for psychiatric examination. The court was, accordingly, under no duty to order such examination in this case.