## STATE v. MARVIN RUSSELL CARLSON.

158 N. W. (2d) 199.

April 5, 1968—No. 40,387.

*C. Paul Jones,* State Public Defender, and *Murray L. Galinson,* Assistant State Public Defender, for appellant.

*Douglas M. Head,* Attorney General, *George M. Scott,* County Attorney, and *David C. Weinberg,* Assistant County Attorney, for respondent.

MURPHY, JUSTICE.

This is an appeal from a judgment of conviction in a criminal case in which it is asserted that statements of defendant made to police during the course of their investigation were involuntarily given and induced by fear and that the court erred in permitting the introduction in evidence of such statements. It is further asserted that the evidence presented did not warrant a verdict of guilty on the charge stated in the information.

The information charged defendant with having, on September 11,

1965, aided and conspired with others in committing the offense of armed robbery. The information apparently is predicated on Minn. St. 609.245, which punishes the offense of armed robbery; § 609.175, which punishes conspiracy; and § 609.05, subd. 1, which punishes one who "intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime."

From the record it appears that about 1 a. m., on September 11, 1965, Richard J. LaMere, a construction foreman, had been visiting with his brother in a Minneapolis tavern. After they parted, LaMere stopped at a nearby sidewalk telephone booth to make a call. As he left the booth, he was accosted by two youths, one of whom held a revolver. They demanded his money, and after he had emptied his pockets, they shot him in the chest and ran. LaMere was found by a passerby who called the police. Although the bullet struck very close to his heart, LaMere survived and later identified his assailants as Charles Powless and Philip Kleindl, two of defendant's companions.

The defendant, who was 19 years of age and who lived in Minneapolis, met Powless, Kleindl, and two other youths at the home of a mutual girl friend the previous evening. They left her house at about 10:30 p. m. in an automobile owned by the father of one of the youths, Gerald Messinger. They rode about the city of Minneapolis for several hours looking for likely places to burglarize. An opportunity favorable to their objective did not present itself until about 1 a. m. when they passed the intersection of Washington and Spring Streets and noticed the victim in the telephone booth. They stopped the car about half a block from where the booth was located. A gun and holster were removed from the glove compartment of the automobile. There was evidence that defendant, who sat in the front seat behind the glove compartment, took out the gun, removed it from its holster, and handed it to one of the boys in the back seat. Powless and Kleindl left the car, and while the others were waiting for them to return, they heard a shot. Immediately thereafter, Powless and Kleindl came running back to the car, jumped in, and they drove to the home of Messinger's grandmother. The other boys left on foot for their respective homes.

After Powless had been apprehended and had given a statement, officers

of the Minneapolis Police Department, on September 18, 1965, arrested defendant at his parents' home. Upon entering the house, one or both of the officers advised defendant and his parents as to why they were there and at the same time defendant was advised of his constitutional rights. Messinger was with the officers at that time. Both he and defendant were taken to police headquarters, where they were booked on suspicion of robbery, and later that day to the General Hospital to appear in a lineup before the victim. En route from his home to police headquarters, defendant and Messinger conversed generally with the officers and told them what happened on the night the offense was committed. Upon returning from the hospital, defendant was advised of his rights, after which he gave a full written statement to the police. The statement was subsequently transcribed by a stenographer and given to defendant to read, after which he signed it and was given a copy. The record does not show that the written confession was used at trial. The police officers, however, did testify as to statements made by defendant relating the circumstances leading up to the commission of the offense.

■    It is the principal contention of defendant that the statements given by him to the police officers preliminary to the time he was booked for the offense with which he was charged were induced by fear and coercion and that the trial court should have sustained objections to the testimony of the police officers as to admissions of defendant. Defendant relies on Malloy v. Hogan, 378 U. S. 1, 84 S. Ct. 1489, 12 L. ed. (2d) 653; Haynes v. Washington, 373 U. S. 503, 83 S. Ct. 1336, 10 L. ed. (2d) 513; Lynumn v. Illinois, 372 U. S. 528, 83 S. Ct. 917, 9 L. ed. (2d) 922; and State v. Biron, 266 Minn. 272, 123 N. W. (2d) 392. We have examined these authorities in light of the facts in this case and are satisfied from the record, as it relates to the circumstances of defendant's admissions, that they were freely given. There is no evidence that defendant's will was overborne, and defendant himself stated that no threats or promises were made to him. The record establishes that defendant was fully informed of his constitutional rights by the officers.[1] Viewing the

---

[1] It may be noted that while the warnings provided by Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. ed. (2d) 694, were substantially given to defendant, the requirements of that decision only apply to cases tried after

totality of the circumstances under which the damaging admissions were made by defendant, we conclude that they were the voluntary product of his own free will and fully admissible in the criminal proceedings against him. State v. Kobi, 277 Minn. 46, 151 N. W. (2d) 404; State ex rel. Dugal v. Tahash, 278 Minn. 175, 153 N. W. (2d) 232.

■ With reference to defendant's argument that the evidence was not sufficient to sustain a verdict of guilty, it is only necessary for us to say that a careful review of the transcript reveals that the evidence, both direct and circumstantial, viewed most favorable to support a finding of guilt, was sufficient to permit the jury to reach that conclusion in the instant case. In State v. Kline, 266 Minn. 372, 374, 124 N. W. (2d) 416, 418, we said:

"In reviewing the sufficiency of the evidence we should emphasize that we do not try the facts anew. Our responsibility extends no further than to make a painstaking review of the record to determine whether the evidence, direct and circumstantial, viewed most favorably to support a finding of guilt, was sufficient to permit the jury to reach that conclusion."

See, also, Cady v. United States, 54 App. D. C. 10, 293 F. 829; State v. Norgaard, 272 Minn. 48, 136 N. W. (2d) 628.

The record supports the finding that defendant was involved as a principal under circumstances where he was liable for the crimes of another under Minn. St. 609.05. The record fully substantiates that defendant with other youths during the evening hours ranged about the city of Minneapolis looking for someone to rob or some place to burglarize and that, when the assault and robbery of the victim in this case occurred, he was well aware of what was going on. The mitigating circumstances which might arise from the fact that he did not actually engage in the robbery or shooting is a matter for the Youth Conservation Commission to consider in passing upon whatever relief he might be entitled to by way of parole.

Affirmed.

---

June 13, 1966. The trial of this case commenced on November 23, 1965. Johnson v. New Jersey, 384 U. S. 719, 86 S. Ct. 1772, 16 L. ed. (2d) 882.