STATE of Minnesota, Respondent,

v.

Donald R. AMOS, Appellant.

No. C5–83–297.

Supreme Court of Minnesota.

April 27, 1984.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Vernon E. Bergstrom, Chief Appellate Section, Richard Osborne, J. Michael Richardson, Asst. County Attys., Beverly J. Wolfe, Staff Atty., Minneapolis, for respondent.

SIMONETT, Justice.

Defendant appeals his conviction for first-degree murder, claiming that premeditation is lacking as a matter of law and that various trial errors require a new trial or at least that the conviction should be reduced to second-degree murder. We affirm.

On August 7, 1982, at about 6 p.m., defendant Donald R. Amos shot and killed John Coles at the intersection of Eighth Street and Emerson Avenue North in Minneapolis. The victim, Coles, driving his automobile southbound on Emerson, had stopped for the stop sign at the intersection with Eighth Street. Defendant Amos, riding as passenger in a car traveling northbound on Emerson, had also come to a stop at the Eighth Street intersection. Thus the two cars were stopped on Emerson, facing each other across Eighth Street. Defendant Amos got out of his car with a .22 revolver in hand, ran diagonally across the intersection to the driver's side of Coles' car, and fired a shot that struck Coles in the chest. The bullet, fired from a range of 1 to 2 feet, perforated the lungs and heart, killing Coles. The cylinder fell off the revolver into the Coles car. Two passengers in the Coles car claim they heard the gun click after the first shot but defendant denies he attempted a second shot.

At trial defendant Amos argued that he fired at Coles in self-defense or at least under the heat of passion, and he denied any premeditation or intent to kill. There was evidence that earlier in the afternoon Amos and Coles had an argument, then an altercation, and Coles threatened to shoot Amos the next time he saw him. Amos,

C. Paul Jones, Public Defender, Mary E. Steenson, Asst. Public Defender, Minneapolis, for appellant.

who retreated from the altercation, admits he felt "humiliated" by the incident. Amos testified he then borrowed a gun to protect himself until Coles, who was apparently high on alcohol and drugs, settled down. It was 1 to 3 hours after the fight that Amos and Coles met again at the intersection, each in his respective car, facing one another across Eighth Street. Amos testified he and Coles made eye contact across the intersection and that Coles bent down as if to get something from under his car seat. Thinking Coles was reaching for a gun, Amos grabbed the revolver and ran across the intersection and fired the shot that killed Coles. Amos left the scene, but shortly after hearing of Coles' death he surrendered to the police.

■ 1. On appeal defendant Amos argues that as a matter of law the evidence was insufficient to show intentional and premeditated murder under Minn.Stat. § 609.185(1) (1982). He claims if he had intended to kill Coles he would have aimed for the head but instead he aimed for the shoulder and, because Coles moved at the last moment, the bullet struck the chest. By his own admission, however, Amos had deliberately armed himself and he ran across the street to shoot Coles from a range of 2 feet. These facts are sufficient to establish both the necessary intent for the crime and premeditation. *See State v. Neumann*, 262 N.W.2d 426, 430–31 (Minn. 1978); *State v. Campbell*, 281 Minn. 1, 161 N.W.2d 47 (1968). Regardless of the fighting that went on earlier in the day, defendant Amos was clearly the aggressor in what happened at the intersection and the jury was amply justified in rejecting the claim of self-defense.

■ 2. Appellant Amos claims it was error for the trial court to allow the testimony of the victim's 8-year-old child, who was sitting in the back seat of his father's car, behind his father, and witnessed the shooting. Except for children testifying in criminal sexual abuse cases, " * * * children under ten years of age, who appear incapable of receiving just impressions of the facts respecting which they are exam-

ined, or of relating them truly, are not competent witnesses." Minn.Stat. § 595.-02(6) (1982). The determination of witness competency is left to the discretion of the trial judge. *State ex rel. Dugal v. Tahash*, 278 Minn. 175, 178, 153 N.W.2d 232, 234–35 (1967). Typically, the trial judge conducts a preliminary examination on two points: (1) whether the proposed witness understands the obligations of the oath, and (2) whether the witness can narrate the facts to which his or her testimony relates. *Id.*

Here the trial court held a preliminary chambers examination. The boy was asked what it meant to tell the truth; he seemed unable, either because of shyness or otherwise, to give an adequate answer, although after the judge permitted the boy to speak privately with the prosecutor and family members, the boy said it was not "okay" to tell a lie. Without testing the child's ability to relate the facts concerning his father's death, the trial court then declared the boy competent to testify. The boy's testimony consisted largely of one-word answers to leading questions on matters not really in dispute, but when asked if the defendant said anything while at the car, the boy responded, "Yes. * * * He wouldn't do it again." This statement was later corroborated by a police officer who testified that when he had interviewed the boy several hours after the shooting, the boy told him that defendant had said, "You'll never do it again."

■ It would have been better, we think, if the trial court had not allowed the child to testify. Nevertheless, we are not prepared on this record to say there was error. In his courtroom testimony, the boy was able to relate events in a general way and his testimony about what the defendant had said was in response to a nonleading question. Moreover, the witness' testimony was essentially cumulative. Although a close question, we also think the police officer's testimony was admissible as corroborative of the child's testimony. *See State v. Lasley*, 306 Minn. 224, 228, 236 N.W.2d 604, 607 (1975), *cert. denied*, 429

U.S. 1077, 97 S.Ct. 820, 50 L.Ed.2d 796 (1977).

3. Appellant Amos claims the trial court erred in excluding evidence of Amos' knowledge of victim Coles' police record and reputation for violence, as well as excluding statistics on the violent character of the neighborhood where the shooting occurred. This evidence, argues Amos, goes to whether he, as the defendant, was reasonably put in apprehension of serious bodily harm and who, in fact, was the aggressor. *See State v. Matthews,* 301 Minn. 133, 134, 221 N.W.2d 563, 564 (1974).

■ Defendant Amos wanted to testify to a conversation he had with Coles when both were in prison in which Coles described the crime for which he had been convicted. This testimony was ruled inadmissible hearsay. Amos' testimony on other acts of violence by Coles was also disallowed as irrelevant. Finally, the court refused, on grounds of relevancy, to allow the defense to elicit from a police officer the high rate of violent crime in the area. The hearsay ruling would seem incorrect, since the statement was offered not for its own truth but to show Amos' apprehension of Coles. Amos' knowledge of Coles' past acts of violence would seem relevant to Amos' apprehension from Coles' threats. The violent character of the neighborhood, however, would seem to have little or no relevancy. Amos does not claim he armed himself because it was a rough neighborhood but because of Coles' threats.

■ In any event, under Minn.R.Evid. 403, the trial judge can exclude evidence if the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or needless presentation of cumulative evidence. Here the jury had already heard Amos testify that he had seen Coles fight and pull guns on people and that Coles had spent time in prison for "cutting some dude." The jury also learned that Coles had been antagonistic and aggressive toward Amos earlier in the day. Moreover, the jury heard three witnesses testify that the neighborhood was the site of drug traffic and was a junkie hang-out, and that street gambling was a popular neighborhood activity. In other words, there was testimony before the jury sufficient to show that Amos had reason to believe Coles would attack him again, that Amos had some reason to fear for his safety, and that the events took place in a rough neighborhood.

■ Under these circumstances, the trial judge could reasonably have excluded the evidence in question as cumulative or unnecessary to the case, or as confusing on the precise issues in the case, namely, the circumstances under which Amos shot Coles.

4. Defendant Amos claims it was error for the trial court to allow use of his prior convictions for impeachment and, once having allowed their use, to not give a cautionary instruction. We hold there was no error. Amos took the stand in support of his claim of self-defense, and he was then questioned about a simple robbery conviction in 1975 and an aggravated rape conviction in 1977. Earlier the trial court had ruled that only the robbery conviction would be admissible but, upon learning that the rape was aggravated, allowed that conviction to be admitted also.

■ Admissibility of prior convictions for impeachment is governed by Minn.R.Evid. 609. Here both convictions had occurred within the past 10 years and both were punishable by imprisonment in excess of 1 year. The rule further requires, however, "that the probative value of admitting this evidence outweighs its prejudicial effect." Citing *State v. Jones,* 271 N.W.2d 534 (Minn.1978), defendant Amos argues that the assaultive nature of his convictions has little bearing on his credibility and that the prejudicial effect of this evidence outweighed its probative value. This determination, however, is to be made by the trial court, and its ruling will be sustained unless a clear abuse of discretion is shown. *State v. Bettin,* 295 N.W.2d 542 (Minn.1980). Here defendant's credibility was at issue and the convictions were not without probative value. *State v.*

*Brouillette,* 286 N.W.2d 702 (Minn.1979). The prior convictions were not unfairly emphasized or elaborated on by the prosecution. Under the circumstances, it cannot be said that admission of this evidence was a clear abuse of discretion by the trial judge.

 Defendant Amos argues that the trial court should have cautioned the jury that evidence of defendant's prior convictions went only to his credibility and could not be used as substantive evidence of guilt. Defendant claims this instruction should have been given even though not requested. The law is well settled in this state, however, that the failure to give such an instruction, absent a request by counsel, is not reversible error. *State v. Wahlberg,* 296 N.W.2d 408, 420 (Minn. 1980); *State v. Forsman,* 260 N.W.2d 160, 169 (Minn.1977).

 5. Defendant Amos contends that blacks were systematically excluded from his jury in violation of his constitutional rights to trial by an impartial jury and to equal protection of the laws. A defendant has the burden of proving his discriminatory challenge. *See Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); *State v. Gatlin,* 295 N.W.2d 538 (Minn.1980). Here defendant presents no evidence and makes no showing that the jury was selected improperly. His claim, consequently, must be denied.

 6. Defendant argues that the trial court erred in refusing to instruct the jury on first-degree manslaughter as a lesser included offense. In this case, however, no rational view of the evidence would permit a conviction of first-degree manslaughter. *See State v. Keaton,* 258 Minn. 359, 104 N.W.2d 650 (1960); *see also State v. Merrill,* 274 N.W.2d 99, 105 (Minn.1978). We hold that the trial court's ruling was correct.

 7. Finally, defendant Amos asserts inadequate representation by his defense counsel, citing six grounds: (1) failure to find facts to support Amos' defense of duress and heat of passion; (2) failure to request a bench trial; (3) failure either to keep Amos off the witness stand or to request a cautionary instruction on the prior convictions; (4) failure to have made a record for the purpose of challenging jury selection on racial grounds; (5) waiver of counsel's right to be present when the prosecutor talked with the child witness during the competency examination; and (6) agreeing to the introduction of witness Coleman's grand jury testimony instead of requesting a continuance for the purpose of finding Coleman. Amos has asked for a copy of the trial transcript to make his argument on these six grounds, but we see no need for it here. Most of these grounds concern the kind of factual decisions which any reasonably competent attorney might make. *See State v. Berry,* 309 N.W.2d 777, 785 (Minn.1981); *White v. State,* 309 Minn. 476, 480, 248 N.W.2d 281, 285 (1976). With regard to the heat of passion defense and prejudicial jury selection, Amos' real dissatisfaction is with the facts of his case. A lawyer cannot create an issue the facts will not support. Coleman did not witness the shooting, and it does not appear his presence would have added anything to his grand jury testimony. We have carefully reviewed the record. Our review shows that Amos was afforded a fair trial and that his defenses were adequately presented by his trial counsel.

Affirmed.