**STATE of Minnesota, Respondent,**

**v.**

**Robert E. GUY, Appellant.**

**No. C0–86–1842.**

Court of Appeals of Minnesota.

July 14, 1987.

Review Denied Sept. 18, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Michael Richardson, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Elizabeth B. Davies, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by LANSING, P.J., and HUSPENI and RANDALL, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

This appeal is from a judgment of conviction for aggravated robbery. Appellant alleges insufficiency of the evidence. We affirm.

### FACTS

At about 8:55 p.m. on March 27, 1986, Minneapolis patrol officers received a radio transmission report of an aggravated robbery in progress at the Oudal Bookstore. The report was in response to a telephone call made by Douglas Henders, who heard noises in the bookstore located beneath his studio apartment.

Henders said he heard high pitched yelling and unfamiliar "black voices" in the bookstore below. He heard two strangers repeatedly demand money, and heard noises that sounded like blows being struck or objects being thrown. Henders called 911 and gave the operator a "play-by-play" report of what he heard through his floor.

Henders testified that about one half minute passed before the police arrived.

When the police arrived at the book store, they observed Anthony Greer, appellant's companion, walking out of the store. They took him into custody. The officers then entered the building with weapons drawn. They found appellant on the floor, face up, behind a counter. They instructed appellant to get up with his hands raised, and he did so. Police testified he said, "I didn't rob anybody," or "I was just laying there resting."

Toward the back of the store, in what appeared to be living quarters, the police found Justin Oudal sitting on a couch, bleeding from his ears and mouth. His shirt collar was covered with blood, and his pants pockets were pulled out. The room was in disarray, contents from a small closet and from a desk were strewn about the floor. An envelope smeared with blood was found on the floor. Near the location where appellant had been lying on the floor, the police found some change amounting to under $3, Oudal's gold wrist watch, and a small two pronged spearhead. The spearhead was not tested for blood or fingerprints.

Oudal informed the police officers that two men had entered his business and beat him. He said they took his wristwatch and about $138 from his pockets. Oudal described the men as two black men of unequal size, the smaller of whom beat him and took his belongings. Appellant and Greer were brought back into the store and shown to Oudal, who repeatedly said, "That's them, that's the one, that's them." Appellant and Greer were then driven away.

At the police station, an inventory of appellant's possessions indicated he had $3.38. Greer had no money at all. There was no testimony that either appellant or Greer had blood on their clothing, shoes or hands.

Appellant's version of the facts is the following. Appellant stated that he had been on his way to Goofy's, a downtown bar, to meet a friend who was going to lend him money. On the way, he encountered

his friend, Anthony Greer, who decided to go with him to Goofy's. As they passed Oudal's Bookstore, they heard a bumping noise "like someone was tapping." They saw Oudal standing in the window. Oudal had blood on his earlobe. Oudal opened the door, and appellant and Greer asked him if anything was wrong. Oudal asked them to help him to go to sleep, and appellant and Greer helped him back to his couch. Asked if he was all right, Oudal said he was fine. He just wanted to go to sleep. Appellant and Greer did not hit him, reach inside his pockets, or demand money from him.

As they started to walk back out, appellant testified, they saw the police. Appellant said he became frightened when he saw police and he laid down along the side of the counter. Appellant did not see a watch or a spear point on the floor, and did not have with him or use a spear point that day. Some change fell out of his pockets when he got down onto the floor.

Greer did not testify. However, the investigating officer was allowed to testify, without objection, that Greer told him they had entered the bookstore after appellant suggested "he knew a guy who they could get some money from."

Oudal was taken to the hospital, where he appeared very disoriented. Oudal told the physician, as he told police at the scene, that he had been assaulted by two black men.

■ Oudal suffers from Wernicke Korsakoff's syndrome. Symptoms include mental confusion, poor memory recall, ataxia or problems with ambulating, and problems with mechanical eye movement. The syndrome can be caused by chronic use of alcohol or trauma to the brain. When Oudal was examined after the beating, there was no indication of trauma to the brain. The hospital physician testified that Oudal's mental status, as measured by CT scans and other tests, had not changed significantly from previous examinations. At the hospital, a blood alcohol was taken from Oudal which showed .10 concentration.[1]

Oudal's trial testimony was confused. He had difficulty naming members of his family and at one point referred to his watch as a shoe.

Oudal's son took the stand and testified that on June 1, 1986, Oudal told him one of the two men who robbed him was white, and it was the white, shorter man, who beat him. Appellant, a black man, is shorter than Greer. At trial, Oudal again stated that the man who put him on the floor and took his money was white. Oudal was consistent that the smaller of the two men had injured him. Under cross examination, Oudal repeated, approximately four to six times, that his assailant was white. On redirect, the prosecutor was not able to rehabilitate this testimony. During repeated examination by both sides, Oudal persisted in claiming he was beaten by a white assailant, and when asked if his assailant was in court, he testified he could not see him.[2]

Appellant was convicted of aggravated robbery and sentenced to 61 months in prison.

### ISSUE

Was the evidence, including the inconsistent eyewitness testimony and circumstantial evidence, sufficient to sustain appellant's conviction?

### ANALYSIS

This court must affirm the jury verdict if the evidence is such that the jury, acting with due regard for the presumption of innocence and the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude the defendant

---

1. A .10 blood alcohol reading in Minnesota is presumptively enough to support a conviction of driving while intoxicated. Minn.Stat. § 169.-121, subd. 1(d) (1986). It is not sufficient, by itself, for a rebuttable presumption that a witness cannot remember and relate events accurately. It may support that inference, depending on other testimony.

2. Pursuant to standard courtroom trial procedure, appellant was seated at the counsel table next to his attorney.

was guilty. *State v. Hamilton*, 289 N.W.2d 470, 476 (Minn.1979).

■ Oudal's testimony at trial that his assailant was white introduced a substantial and dramatic contradiction into the State's case. We must determine whether that testimony by itself created a reasonable doubt and whether the remaining evidence was sufficient to support the conviction. So long as contradictions within the State's case do not render its proof equivocal, and substantial evidence otherwise exists, the court must not interfere with the verdict. *U.S. v. Higginbotham*, 451 F.2d 1283, 1285 (8th Cir.1971) (sheriff who did not see the gun another officer saw may have been facing defendant the wrong way).

### Oudal's testimony

Our review of the transcript indicates Oudal may not have been competent to testify. Arguably, he was not able to correctly narrate the facts to which he was testifying. *State ex rel. Dugal v. Tahash*, 278 Minn. 175, 178, 153 N.W.2d 232, 234 (1967). Oudal's testimony was incoherent and, at times, non-responsive to questioning. He confused his watch with a shoe, and had difficulty naming members of his own family. However, no objection was made to the competency of Oudal to give testimony at trial; therefore, we need not address this issue. *State v. Beeks*, 311 N.W.2d 496, 497 (Minn.1981). The jury, however, could, and presumably did, find Oudal's trial testimony as to the color of his assailant not credible despite the lack of any objection on Oudal's competency to testify. *See* 3 Wigmore, *Evidence* § 497 (Chadbourn rev. 1970) (jury may reject the witness' testimony as not credible even if the court has found him competent).

■ A reviewing court must assume the jury believed the State's witnesses and disbelieved any contrary evidence. *State v. Oevering*, 268 N.W.2d 68, 71 (Minn.1978). Here, although Oudal was a witness for the prosecution, we can assume the jury disbelieved his trial testimony as to color and rested their decision on the other evidence. We find there was sufficient basis

for the jury to discredit Oudal's in court testimony that his assailant was white and decide the case on the other evidence.

### Circumstantial evidence

■ A conviction may stand, despite inconsistencies in the testimony of eyewitnesses and their failure to identify the defendant, if circumstantial evidence offered is strong enough to exclude any reasonable hypothesis of innocence. *State v. Bergland*, 290 Minn. 249, 253–54, 187 N.W.2d 622, 625 (1971).

■ The circumstantial evidence here, based on the testimony of Henders, the upstairs resident, was strong. Henders testified the assault downstairs continued even after he called 911 and as he talked to the operator. He testified police arrived within one half minute of the call. Police testified that on their arrival they found appellant lying behind a counter in the bookstore.

It is "possible" appellant and Greer innocently entered the bookstore in that time, even allowing the time necessary for the real assailant(s) to escape. However, appellant and Greer could not have conversed with Oudal and helped him back to his living quarters as appellant described. Moreover, appellant testified he and Greer were in the bookstore for 5 to 10 minutes before the police came. This testimony cannot be reconciled with that of Henders, a neutral and impartial witness. Also, the jury, within their discretion, was entitled to completely discount appellant's explanation for his presence in the bookstore.

In *State v. Randle*, 294 Minn. 514, 200 N.W.2d 303 (1972), the court held that, although the victim's identification of defendant was impeached and had little probative value, circumstantial evidence was sufficient to support the conviction. We have that situation here. The evidence in *Randle* consisted of defendant's presence with other intruders moments after the robbery and the discovery of the weapon in a car in which defendant was riding. The circumstantial evidence here was as strong or stronger, assuming the jury found Hen-

ders credibile, as we must as a court of appellate review. The circumstantial evidence was not consistent with any rational hypothesis other than appellant's guilt. *See State v. Jacobson*, 326 N.W.2d 663, 666 (Minn.1982).

Appellant contends the circumstantial evidence is consistent with his innocence because no blood was found on his clothing and little money was found on his person. Oudal was found covered with blood after the assault, and testified he was robbed of $15, although he had earlier claimed a loss of $138. However, it is just as reasonable to conclude appellant would have been smeared with blood if he had helped the bleeding Oudal back to his couch, as he testified. A small amount of money and Oudal's watch were found near appellant. Appellant could have discarded other money at the last minute. The jury could have discredited Oudal's testimony concerning the amount of money that was taken.

Appellant and his friend Greer were linked to the crime because they were found on the scene immediately after the assault. If Henders' testimony is believed, the two were the only possible perpetrators. Other circumstances were not inconsistent with appellant's guilt. *Cf. State v. Berndt*, 392 N.W.2d 876, 880 (Minn.1986) *cert. denied*, 475 U.S. ——, 107 S.Ct. 909, 93 L.Ed.2d 859 (1987) (reversing murder conviction of husband and father whose family died in house fire where the only evidence linking him to possible arson was his presence at the home when the fire started). The credibility of appellant's explanation for his presence at the scene was for the jury to determine. *State v. Daniels*, 361 N.W.2d 819, 826 (Minn.1985). Despite its considerable detail, appellant's testimony that he came into the store to help Oudal; helped him back to a couch; and then laid down on the floor because he, a good samaritan, was frightened when he saw police coming; is improbable when contrasted with the testimony of Henders, a neutral witness. Appellant's version was strictly a credibility question for the jury to consider and accept or refuse. Finally, the investigating officer testified, without objection, that Greer told him that Mr. Guy had said he knew a guy who they could get some money from, and they knocked on the door and went in the bookstore.

At trial appellant objected, based on lack of foundation, to Henders' testimony that he heard "black voices" in the bookstore during the assault. After hearing argument at a bench conference, and hearing the prosecution's offer of proof that Henders, because of his years in the military, could distinguish between different ethnic sounding voices, the trial court overruled the objection and allowed the testimony to stand. This testimony was thus available for the jury to consider for whatever probative value it possessed.

The defense made no claim Oudal was not competent to testify at trial. The defense cross-examined him effectively, and left his testimony unchallenged, for whatever weight and credibility the jury might give it. While Oudal testified his assailant was white, that contradiction with his earlier on the scene identification did not render that statement inadmissible, but merely created a conflict for the jury to resolve.

A reviewing court will defer to the factfinder's ability to assess the credibility of testimony. Despite the contradiction presented by Oudal's testimony, we cannot say as a matter of law the jury, having due regard for the presumption of innocence and the necessity of overcoming it by proof beyond a reasonable doubt, could not reasonably conclude appellant was guilty.

## DECISION

The evidence, taken as a whole, was sufficient to support the conviction.

Affirmed.