**STATE of Minnesota, Respondent,**

v.

**Alphonse MAGEE, Appellant.**

**No. C8–87–299.**

Court of Appeals of Minnesota.

Oct. 6, 1987.

Review Denied Nov. 24, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Sec-tion, John C. Brink, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, Public Defender, Marie L. Wolf, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by NORTON, P.J., MULALLY* and LOMMEN,* JJ., with oral argument waived.

## OPINION

MULALLY, Judge.

This appeal is from a judgment of conviction and sentences for first-degree criminal sexual conduct and second-degree assault. The jury found appellant Alphonse Magee not guilty of one count of first-degree criminal sexual conduct. The court sentenced Magee to 114 months executed sentence for the criminal sexual conduct conviction, a one and one-half times durational departure.

## FACTS

Appellant Alphonse Magee was convicted of assaulting W.C. and forcing her to perform oral sex on September 22, 1986. After an afternoon and evening of drinking, Magee, W.C., John James, and Tommy Lawler went to a residence at 3004 Pleasant in Minneapolis, where James was living and W.C. had been staying. The assault occurred in the house and continued down the street to an alley, where police, who had been summoned, found Magee holding a bloody and nude W.C.

Magee testified that Tommy Lawler, whom he knew before, invited him to 3004 Pleasant. There he was introduced to James and W.C., who had been drinking. All four then walked to a liquor store and bought wine and beer which they drank in a park. They bought more wine and returned to the Pleasant address where they all continued drinking.

W.C. testified that by 7:00 p.m. she and James had gone to bed. James was living in a back room of a house, owned by Marie Anderson.

* Acting as judge of the Court of Appeals by ap-pointment pursuant to Minn. Const. art. 6, § 2.

W.C. testified despite the prosecutor's admission she had had two beers before coming to the courthouse. [Following W.C.'s testimony, defense counsel, in making a record, stated she had requested an examination as to competency but the court had denied the request.]

W.C. testified that she was awakened during the night by Magee, who pulled her out of bed, saying he wanted her to leave the house. He then pulled a knife and put it to her chest, saying he was going to kill her. When she tried to take the knife away, her fingers were cut. She stated Magee dragged her outside where they fought over the knife. Magee tore her shirt off, and she tried to run away, but he caught her across the street. Magee told her that "he was going to make her a prostitute, and then that he was going to screw her." Magee made her take her pants and shoes off, and forced W.C. to perform oral sex. Magee had thrown the knife away when the two were still in the front yard of 3004 Pleasant. Police officers found the knife there.

Magee admitted there had been a struggle over the knife, but testified W.C. had pulled the knife on Tommy Lawler. When Magee intervened, W.C. approached him with the knife in hand, cursing him. They wrestled over the knife and W.C. was cut. Magee dragged her to the front yard, where he pulled her jacket over her head "flipped" her, and threw the knife away. Magee started to leave, but returned for his hat and W.C. "jumped him" from behind. They then struggled all the way across the street and W.C. ran to the alley, Magee pursuing her. Magee did not know how or why W.C. disrobed.

Magee testified that he had told W.C. to leave the house, because the owner, Marie Anderson, wanted her to leave, and W.C. had ignored her.

Marie Anderson testified by deposition. She confirmed that she had asked W.C. to leave, but her testimony as to the fight itself differed from Magee's. She testified that she saw Magee take the knife out of a kitchen drawer and that Magee had the knife at W.C.'s throat as W.C. was lying on the floor.

At times during cross-examination W.C. answered, "No reply," or refused to answer. The court sustained a number of objections to questions asked on cross-examination. The court also admonished W.C. she must answer the questions or state she did not recall. W.C. could not recall several events surrounding the incident when asked on cross-examination. At one point she stated she did not recall anything of that night.

During cross-examination, Magee's attorney moved to strike W.C.'s testimony based on her non-responsiveness. The trial court denied the motion. The court also indicated it was counsel's responsibility to probe the witness to lay the groundwork for a claim of incompetency.

Prior to sentencing, the state sought a sentencing departure based on: (1) vulnerability of the victim due to intoxication; (2) particular cruelty; and (3) injury to the victim with a prior offense (manslaughter) also involving injury to the victim. The court imposed a sentence of 114 months, a one and one-half times durational departure, based on these three factors.

## ISSUES

1. Was appellant denied a fair trial?

2. Was the evidence sufficient to sustain his convictions?

3. Did the trial court abuse its discretion in departing from the guidelines?

## ANALYSIS

### 1. *Trial errors*

Magee claims a number of trial errors. Only those as to W.C.'s competency and limitation on cross-examination merit extensive discussion.

Briefly, Magee's claim he was prejudiced by the court's treatment of his counsel is based on a single exchange that followed counsel's attempt to introduce evidence of prior sexual conduct by the victim, in violation of Minn.Stat. § 609.347, subd. 3 (1986). This exchange was brief, isolated, and

probably justified. *Cf. Hansen v. St. Paul City Railway Co.*, 231 Minn. 354, 43 N.W.2d 260 (1950) (numerous clashes between court and counsel required a new trial).

Magee's claim that he was not allowed to make a complete record of voir dire ignores the court's offer to allow his counsel to re-examine any jurors as to whom she felt an inadequate record had been made. Magee's claim he was denied a fair trial by the delay between the completion of testimony and closing arguments is without merit.

### a. *Competency*

■ It is the trial court's responsibility to determine the competency of a witness, a determination ordinarily made by preliminary examination before the witness takes the stand. *State ex rel. Dugal v. Tahash*, 278 Minn. 175, 177, 153 N.W.2d 232, 234 (1967). The trial court here did not do so, at least on the record, and later declined a defense motion to strike W.C.'s testimony.

■ The test of competency is basically the ability to remember and to trustfully relate the facts about which the witness is questioned. Minn.Stat. § 595.02, subd. 1(f) (1986). Generally, the determination whether a witness is competent is left to the discretion of the trial court. *State v. Amos*, 347 N.W.2d 498, 501 (Minn.1984) (child under ten years old).

■ The trial court was not required to examine W.C. as to her competency simply because she had drunk two beers. Magee, however, also relies on W.C.'s claimed lack of recollection and general resistence to cross-examination in arguing she was not competent.

W.C. responded to questioning on direct examination and her testimony indicates some recall of the events in question, although limited by her intoxication that night (her blood alcohol was tested at .26 several hours after the incident). She could remember how much beer and wine they had bought, and where. W.C.'s intoxication on the night of September 22, and any evasiveness on cross-examination

were factors for the jury to consider in weighing her credibility.

### b. *Cross-examination*

■ Magee contends he was denied his right of cross-examination by W.C.'s resistance to cross-examination and the trial court's failure to direct her to answer questions.

The right of confrontation is intended to permit defense counsel to "expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could approximately draw inferences relating to the reliability of the witness." *Davis v. Alaska*, 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974) (quoted in *Delaware v. Fensterer*, 474 U.S. 15, 19, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985)). There may be situations in which limitations on cross-examination rise to the level of a constitutional violation, as in *Davis*, in which the Court held defendant was denied his right to confrontation when he was barred from questioning a witness as to his juvenile record.

The Supreme Court has recently indicated that a witness' lack of memory on cross-examination does not constitute a denial of the right to confrontation. In *Delaware v. Fensterer*, where an expert witness could not recall the basis of his expert opinion, there was no limitation on cross-examination imposed by the court. The Court stated·

> But it does not follow that the right to cross-examination is denied by the State whenever the witness' lapse of memory impedes one method of discrediting him. Quite obviously, an expert witness who cannot recall the basis for his opinion invites the jury to find that his opinion is as unreliable as his memory.

*Id.*, 106 S.Ct. at 294.

In like manner, the credibility of a witness who is obviously evasive may well be seriously damaged. The court did instruct W.C. she should answer the questions if she could. Cross-examination was lengthy and extensive, and those objections sustained were made on the grounds of relevance or repetition.

As the Supreme Court stated in *Fensterer*:

> Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.

106 S.Ct. at 295 (emphasis in original).

### 2. *Sufficiency of the evidence*

Magee's argument that the evidence was insufficient to sustain the convictions relies heavily on W.C.'s responses to cross-examination and is without merit. W.C. did testify to facts establishing assault and criminal sexual conduct on direct examination, and this court must assume the jury believed her testimony. *State v. Brouillette*, 286 N.W.2d 702, 705 (Minn.1979).

Even if corroboration of W.C.'s testimony were required, two key items of evidence contradicted Magee's version of events. First, Magee was found struggling with a nude and bloody woman who immediately tried to climb a fence to reach the first police officer she saw. This circumstantial evidence was consistent with the claim of sexual assault, and tended to negate Magee's story of a confused struggle for a knife initiated by W.C. Secondly, Marie Anderson's testimony that she saw Magee take the knife from her kitchen drawer directly contradicted Magee's testimony that W.C. drew the knife. Finally, along with other evidence against Magee, he admitted to having lied to police when first questioned about the incident.

### 3. *Sentencing departure*

Magee concedes that grounds for departure exist when the victim is injured and the offender has a prior offense involving injury to the victim. *State v. Williams*, 337 N.W.2d 689, 691 (Minn. 1983); Minnesota Sentencing Guidelines II. D.2.b(3) (1986). This aggravating factor alone was sufficient to support a one and one-half times durational departure. Other factors advanced by the state as grounds for a durational departure are questionable, but in any event are unnecessary.

### DECISION

Defendant received a fair trial; the evidence was sufficient to sustain his convictions; and the trial court did not abuse its discretion in departing from the guidelines.

Affirmed.