*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1880**

State of Minnesota,
Respondent,

vs.

Javon Lamar Johnson,
Appellant.

**Filed September 8, 2015
Affirmed
Reilly, Judge**

Hennepin County District Court
File No. 27-CR-13-27842

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Susan L. Segal, Minneapolis City Attorney, Heather Robertson, Assistant City Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Hudson, Presiding Judge; Schellhas, Judge; and Reilly, Judge.

## U N P U B L I S H E D   O P I N I O N

**REILLY**, Judge

Appellant challenges his conviction of gross misdemeanor negligent storage of a

loaded firearm, arguing that the evidence presented at the jury trial was insufficient to

prove him guilty, that the jury instruction defining negligence was plainly erroneous and affected his substantial rights, and that the district court erred by designating a certain juror the alternate. We affirm.

**FACTS**

In July 2013, Sergeant Patrick King of the Minneapolis Police Department stopped a vehicle driven by appellant Javon Lamar Johnson. Johnson's two teenage children were riding in the backseat. During the traffic stop, Sergeant King observed the barrel of a handgun protruding from underneath the driver's seat into the rear passenger compartment and pointing toward the backseat. The vehicle was later searched, and officers discovered that the handgun was loaded. Johnson was charged with gross misdemeanor negligent storage of a loaded firearm, in violation of Minn. Stat. § 609.666, subd. 2 (2012).

A two-day jury trial was held in July 2014. On the first day of trial, the district court judge's clerk informed the judge that one of the jurors approached the clerk and stated "[I] kind of feel sorry for [Johnson]" and then "oh, wait I'm not supposed to say anything to you." The district court questioned the juror about the incident on the record the following day, and the juror asserted that he did not remember making those statements to the clerk but that he did not know for sure and "might have said that." The juror denied speaking to any of the other jurors about his views of the case or of Johnson and stated that he would be able to decide the case based on the evidence presented and the law. The district court confirmed with the rest of the jurors that they had not overheard or had any communications about the case. The district court designated the

2

questioned juror the alternate and dismissed him before the jury was released to deliberate. That juror would not have otherwise been designated the alternate. The jury found Johnson guilty of negligent storage of a loaded firearm, and this appeal follows.

**D E C I S I O N**

**I.**

"A person is guilty of a gross misdemeanor who negligently stores or leaves a loaded firearm in a location where the person knows, or reasonably should know, that a child is likely to gain access, unless reasonable action is taken to secure the firearm against access by the child." Minn. Stat. § 609.666, subd. 2. Johnson argues that the evidence presented at trial was insufficient to prove beyond a reasonable doubt (1) that he knew or reasonably should have known that a child was likely to gain access to the handgun discovered in his vehicle and (2) that reasonable action was not taken to secure the handgun against access by a child.

Assessing the sufficiency of the evidence involves "a painstaking review of the record to determine whether the evidence and reasonable inferences drawn therefrom, viewed in a light most favorable to the verdict, were sufficient to allow the jury to reach its verdict." *State v. Vang*, 847 N.W.2d 248, 258 (Minn. 2014) (quotation omitted). The reviewing court must "assume that the [jury] believed the state's witnesses and disbelieved any contrary evidence." *Gulbertson v. State*, 843 N.W.2d 240, 245 (Minn. 2014) (quotation omitted); *see also State v. Hurd*, 819 N.W.2d 591, 598 (Minn. 2012) (stating that "the jury is in the best position to weigh credibility and thus determines which witnesses to believe and how much weight to give their testimony" (quotation

3

omitted)).  A guilty verdict will not be reversed "if, giving due regard to the presumption of innocence and to the prosecution's burden of proving guilt beyond a reasonable doubt, the jury could reasonably have found the defendant guilty of the charged offense."  *Vang*, 847 N.W.2d at 258 (quotation omitted).

Sergeant King testified at trial that he initially observed Johnson's vehicle while it was parked.  He saw several males outside the vehicle on its driver's side "looking like peering down into the car, toward the floor of the driver's side of the vehicle."  Sergeant King testified that, when he later stopped the vehicle, two juveniles were riding in the backseat.  After the occupants exited the vehicle, he approached the vehicle on the driver's side and saw "a handgun that was protruding underneath the seat on the driver's side, protruding into the rear passenger compartment" with "the barrel . . . facing toward the rear."  He testified that the handgun was loaded.  Photographs were admitted into evidence showing the handgun and its location in the vehicle.  Sergeant King testified that the photographs depicted the handgun in the place he had seen it in the vehicle and that the driver's seat was moved forward to take some of the photographs.

Johnson contends that the evidence did not prove that a backseat passenger was likely to gain access to the handgun and that he did not reasonably secure the handgun.  Johnson testified at trial that there is a "safe spot [he] created" on the driver's side of his vehicle that is "more cushion and things around it so it [is] a safe, tight area."  He testified that he put the handgun in this area when he got into the vehicle before the traffic stop and that the handgun was "secure."  He disputed that the handgun was located

4

underneath the driver's seat. Johnson further testified that a backseat passenger in his vehicle cannot reach something under the front seat.

We must assume that the jury believed Sergeant King's testimony that he saw people outside the vehicle looking down at the floor of the driver's side of the vehicle and that, when he approached the vehicle and looked inside, he saw the handgun protruding underneath the driver's seat into the rear passenger compartment. *See Gulbertson*, 843 N.W.2d at 245 (stating that a court reviewing the sufficiency of the evidence "assume[s] that the [jury] believed the state's witnesses"). From the testimony that the handgun was protruding underneath the driver's seat into the rear passenger compartment, the jury could use common sense to determine that the handgun was located where Johnson reasonably should have known that the backseat passengers were likely to gain access. *See State v. Russell*, 503 N.W.2d 110, 114 (Minn. 1993) ("In making its factual determination, the jury was entitled to make reasonable inferences from the evidence, including inferences based on their experiences or common sense." (quotation omitted)); *State v. Bouwman*, 328 N.W.2d 703, 705 (Minn. 1982) (stating that jurors "rely[] on their sensory perceptions, experiences in life, and their common sense" when considering evidence). The jury was free to discount Johnson's testimony that a backseat passenger in his vehicle cannot reach something under the front seat. *See State v. Tscheu*, 758 N.W.2d 849, 858 (Minn. 2008) (stating that a court reviewing the sufficiency of the evidence assumes that the jury disbelieved the defense witnesses); *State v. Guy*, 409 N.W.2d 248, 251 (Minn. App. 1987) (stating that "the jury, within their discretion, was entitled to completely discount appellant's explanation"), *review denied* (Minn. Sept. 18,

5

1987). From Sergeant King's testimony about the location of the handgun and from the photographs admitted into evidence, which Sergeant King testified depicted the handgun as he saw it in the vehicle, the jury could also use common sense to determine whether reasonable action was taken to secure the handgun against access by the backseat passengers. The jury was free to discount Johnson's testimony that the handgun was located in "a safe, tight area" and was "secure." We conclude that the evidence presented at trial and the reasonable inferences to be drawn from the evidence were sufficient to permit the jury to find Johnson guilty of negligent storage of a loaded firearm.

**II.**

"A person is guilty of a gross misdemeanor who *negligently* stores or leaves a loaded firearm in a location where the person knows, or reasonably should know, that a child is likely to gain access, unless reasonable action is taken to secure the firearm against access by the child." Minn. Stat. § 609.666, subd. 2 (emphasis added). According to the jury instruction guide for this offense, "[t]he term 'negligence' means the doing of something that a reasonable person would not do or the failure to do something that a reasonable person would do under the circumstances." 10 *Minnesota Practice*, CRIMJIG 13.98 (2006). The jury was given this definition of negligence in the jury instructions, and Johnson did not object to the instruction. Johnson challenges the jury instruction on appeal.

An appellate court may review an unobjected-to jury instruction using plain-error analysis. *State v. Davis*, 864 N.W.2d 171, 176 (Minn. 2015). The defendant must establish that there was an error that was plain and that affected his substantial rights.

6

*State v. Bustos*, 861 N.W.2d 655, 660-63 (applying plain-error analysis to a challenge to a definition contained in jury instructions when the definition was not objected to at trial). "An error is plain if it is clear or obvious; usually this means an error that violates or contradicts case law, a rule, or an applicable standard of conduct." *Id.* at 660-61 (quotation omitted). A jury instruction is erroneous if it materially misstates the law. *Davis*, 864 N.W.2d at 176; *see also State v. Gunderson*, 812 N.W.2d 156, 162 (Minn. App. 2012) (stating that a jury instruction "is not necessarily insulated from being plain error because it follows the applicable CRIMJIG" and that, if a CRIMJIG conflicts with the applicable law, "the district court is expected to depart from the CRIMJIG and properly instruct the jury").

The statutes do not define the terms negligent, negligence, or negligently as used in the criminal code. Johnson argues that these terms are defined differently in the criminal context than in the civil context and that the definition of negligence in the jury instruction guide and provided to the jury is the civil definition. *Compare* 10 *Minnesota Practice*, CRIMJIG 13.98 (defining negligence as "the doing of something that a reasonable person would not do or the failure to do something that a reasonable person would do under the circumstances"), *with Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014) (defining negligence in a civil context as "the failure to exercise the level of care that a person of ordinary prudence would exercise under the same or similar circumstances").

The legislature may criminalize negligence if it gives a clear indication of its intention to do so. *See State v. Tice*, 686 N.W.2d 351, 355 (Minn. App. 2004) (stating

7

that, in using the terms willfully, intentionally, and recklessly in a statute, the legislature expressed intent not to criminalize ordinary negligence), *review denied* (Minn. Nov. 16, 2004); *see also State v. Munnell*, 344 N.W.2d 883, 886 (Minn. App. 1984) (stating that "the Minnesota Supreme Court [has] upheld the constitutionality of using an ordinary negligence standard in criminal statutes"). In addition to the statute criminalizing negligent storage of a loaded firearm, several other Minnesota statutes criminalize actions performed negligently or in a negligent manner. *See, e.g.*, Minn. Stat. §§ 609.205(2), (4), .2665(2), (4) (2014) (defining second-degree manslaughter as causing a death "as a result of negligently believing [a person] to be a deer or other animal" or "by negligently or intentionally permitting any animal, known by the person to have vicious propensities or to have caused great or substantial bodily harm in the past, to run uncontrolled off the owner's premises, or negligently failing to keep it properly confined"); Minn. Stat. § 609.2112, subd. 1(2), (5), (6) (2014) (defining criminal vehicular homicide as causing a death as a result of operating a motor vehicle "in a negligent manner" plus other factors); Minn. Stat. §§ 609.2113, subds. 1–3, .2114, subds. 1, 2 (2014) (defining criminal vehicular operation as causing bodily harm to another or death or injury to an unborn child as a result of operating a motor vehicle "in a negligent manner" plus other factors); Minn. Stat. § 609.226, subd. 1 (2014) ("A person who causes great or substantial bodily harm to another by negligently or intentionally permitting any dog to run uncontrolled off the owner's premises, or negligently failing to keep it properly confined is guilty of a misdemeanor.").

In *State v. Hayes*, the supreme court stated that the terms carelessness and negligence as used in the criminal context are synonymous and may be defined as "[n]ot taking ordinary or proper care" or "a lack of ordinary care; that is, lack of such care as a man of ordinary care would exercise under the particular circumstances of the case." 244 Minn. 296, 299, 70 N.W.2d 110, 113 (1955) (quotations omitted); *see also State v. Crace*, 289 N.W.2d 54, 58-59 (Minn. 1979) (approving of a jury instruction defining negligence as "the failure to use that degree of care which an ordinary prudent or careful person would use under the circumstances that existed at the time the act was committed" (quotation omitted)); *Munnell*, 344 N.W.2d at 886 (defining negligence as "the doing of something which an ordinarily prudent person would not do or the failure to do something which an ordinarily prudent person would do under like or similar circumstances" (quotation omitted)). The definition of negligence contained in 10 *Minnesota Practice*, CRIMJIG 13.98 and given to the jury is consistent with these definitions. The jury instruction did not contradict caselaw, a rule, or an applicable standard of conduct and was not plain error.

### III.

Johnson challenges the district court's decision to designate the questioned juror the alternate, leading to the juror's dismissal. When concerns arise during a trial as to a juror's potential prejudice or partiality, the district court's decision to remove the juror is reviewed for an abuse of discretion. *State v. Manley*, 664 N.W.2d 275, 284-85 (Minn. 2003). Johnson argues that the district court's action constituted a structural error that impacted the entire trial and mandates automatic reversal. Structural errors "affect the

9

entire trial . . . and undermine the structural integrity of the criminal tribunal itself." *State v. Watkins*, 840 N.W.2d 21, 25 (Minn. 2013). A deprivation of the right to an impartial jury constitutes structural error that requires automatic reversal. *State v. Dorsey*, 701 N.W.2d 238, 252-53 (Minn. 2005); *see also State v. Fraga*, 864 N.W.2d 615, 623 (Minn. 2015) ("Permitting a biased juror to serve is structural error requiring automatic reversal."). But Johnson has not alleged a structural error because he does not claim that any of the jurors who deliberated were biased.

"The [district] court is responsible for ensuring that the trial proceedings are fair. When circumstances arise during trial that raise concerns about the fairness of the proceedings, it is appropriate for the [district] court to address those concerns." *Manley*, 664 N.W.2d at 284 (citation omitted) (concluding that a district court acted within its discretion by removing a seated juror during trial and replacing the juror with an alternate after concerns arose about the juror's impartiality). The juror was asked whether he told the district court judge's clerk "[I] kind of feel sorry for [Johnson]" and then "oh, wait I'm not supposed to say anything to you." The juror responded "I don't know what you're talking about" and asserted that he did not remember making such statements. But the juror also stated that he did not know for sure and "might have said that." The district court stated that it was "a little bit concerned because [it had] conflicting information." The district court's resolution of this conflicting information and decision to dismiss the juror due to potential bias involved a credibility determination that is given deference on appeal. *See, e.g.*, *State v. Evans*, 756 N.W.2d 854, 870 (Minn. 2008) ("A finding by a district court of the presence or absence of [juror] bias is based upon

10

determinations of demeanor and credibility and, thus, entitled to deference." (quotation omitted)); *State v. Richards*, 552 N.W.2d 197, 210 (Minn. 1996) ("Because the decision whether the affected juror may continue to sit involves determinations of credibility and demeanor, which are best left to the [district] court, this court affords the [district] court's decision significant deference."). The district court did not abuse its discretion by designating the juror the alternate and then dismissing the juror.

**Affirmed.**