**STATE of Minnesota, Respondent,**

v.

**Gary SCHWANTES, Appellant.**

**No. 52003.**

Supreme Court of Minnesota.

Jan. 15, 1982.

Chestnut & Brooks and Kevin S. Burke, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief Asst. County Atty., Appellate Section, Michael McGlennen, Thomas A. Weist and Anne E. Peek, Asst. County Attys., Minneapolis, for respondent.

SCOTT, Justice.

The defendant was charged with first-degree arson but, at the trial court's request, the state amended the charge to attempted first-degree arson. Thereafter, a district court jury found defendant guilty as charged and the court sentenced defendant to 34 months in prison, the sentence to run consecutively to defendant's federal sentence of 18 months for bank fraud. Issues raised by defendant on his appeal from judgment of conviction are (1) the sufficiency of the evidence that defendant was the one who set the fire, (2) whether defendant was prejudiced by the state's negligent failure to disclose reports of prior statements by defendant's wife, information which bore on defendant's decision to waive the privilege against adverse spousal testimony, and (3) whether there were valid grounds for the trial court to depart from the "presumptive sentence" of 16 months. We re-verse defendant's conviction and remand for a new trial.

No useful purpose would be served by summarizing all the evidence against defendant. Suffice it to say, the state's evidence at defendant's trial was clearly adequate to establish that defendant, owner of a house he had acquired from his mother, deliberately set fire to the house when his mother was temporarily away from the premises. However, a serious breach of the discovery rules requires a new trial in the interests of justice.

The prosecution used the open-file policy of disclosure. Apparently after defense counsel copied the file, a report by an agent from the Bureau of Alcohol, Tobacco and Firearms was placed in the file. This report summarized a statement by defendant's wife at the time a search warrant was executed at their apartment in which she allegedly said that defendant was gone from the apartment when she woke at 11 a.m. on June 8, the day of the fire, and that he returned when she was in the bathroom. This statement discredited defendant's alibi. The timing was crucial. The prosecutor had received an oral report of this statement from another agent of the bureau on the day the search warrant was executed. Defense counsel was not told of this oral report when he requested disclosure or when he copied the file and he was not later told of the subsequently inserted written report. The subsequent written report was specifically requested by the prosecutor, who initially had thought that defendant's wife was friendly to the prosecution but then had learned otherwise. In other words, the prosecutor apparently requested the written report so that it would be available if it became necessary to impeach defendant's wife if she was called and if she testified that defendant had not left the apartment on the morning in question. Notwithstanding defense counsel's continuing demand for discovery, the prosecutor did not tell defense counsel about the report or send a copy to defense counsel but simply put the report in the file even though he had reason to know that defense counsel had already copied the file.

Defense counsel interviewed defendant's wife before trial and she apparently did not tell him that she had told the officers or agents that defendant was gone when she awoke. Thus, in deciding whether to waive the marital privilege, defendant and defense counsel apparently did not know that the wife's testimony bearing on this point could be specifically impeached by a prior inconsistent statement. Had they known this, they presumably would not have waived the privilege, which resulted in the prosecutor's calling the wife and then impeaching that part of her testimony bearing on this point.

As stated in the comment to Minn.R. Crim.P. 9, the purpose of the discovery rule is "to give the defendant and prosecution as complete discovery as is possible under constitutional limitations." The state does not argue that the prosecutor was under no obligation to disclose; rather, it simply argues that there was a slip-up which resulted from the use of the open-file policy, with the written report in question being filed after defense counsel had copied the file. The trial court's view was that the nondisclosure was unintentional and inadvertent; that the file was open to defense counsel; and further, that defendant's wife was more friendly to the defense than to the state and that the state was not responsible for her failure to tell defense counsel what she had told the agents.

We believe that the prosecutor should have contacted defense counsel in this case and told him about the oral report and the written report, especially after he saw that defendant planned to call his wife as a witness, because he had reason to know that the file had been copied before the report was filed and he should have known that the information would be useful to defendant in deciding whether or not to waive the privilege.

The United States Supreme Court has in recent years described the expansion of criminal discovery devices as a "salutary development." *Wardius v. Oregon*, 412 U.S. 470, 474, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973).[1] "[T]he proposition that the ends of justice will best be served by a system of liberal discovery which gives both parties the maximum possible amount of information with which to prepare their cases and thereby reduces the possibility of surprise at trial," *id.* at 473, 93 S.Ct. at 2211, underlies the reciprocal discovery procedures and requirements set out in Rule 9 of the Minnesota Rules of Criminal Procedure.

In *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), the United States Supreme Court upheld a Florida notice-of-alibi provision where there were reciprocal disclosure obligations placed on the prosecution. The *Williams* court pointed out that "[t]he adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played." *Id.* at 82, 90 S.Ct. at 1896. The *Williams* rationale was reiterated in *Wardius* (a case overturning an Oregon notice-of-alibi statute in the absence of a reciprocal discovery requirement).

Consequently, in this case, although the evidence of defendant's guilt was strong, we conclude that a new trial is required in the interests of justice and to insure that the reciprocal discovery rules adopted by this court are observed by both the prosecution and the defense.

Because of this disposition, we do not reach the sentencing issue raised by the appeal.

Reversed and remanded for a new trial.

KELLEY, J., took no part in the consideration or decision of this case.

---

1. For cases illustrating this development, see, *e.g., United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *Williams v.* *Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446, (1970); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).