STATE of Minnesota, Appellant,

v.

James Richard CLOBES, Respondent.

No. C7-87-1606.

Supreme Court of Minnesota.

April 15, 1988.

Rehearing Denied May 9, 1988.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Robert Johnson, Anoka Co. Atty., Marcy S. Crain, Anoka, for appellant.

Phillip S. Resnick, Minneapolis, for respondent.

AMDAHL, Chief Justice.

The sole issue for us to decide is whether the prosecutor's failure to disclose certain evidence that might have been used to impeach a key prosecution witness justifies granting defendant a new trial on felony assault charges. Disagreeing with the Court of Appeals, we reverse the award of a new trial and reinstate the judgment of conviction.

This case grew out of a love triangle involving defendant, Sherri Luoma and Dr. David Fashingbauer, a chiropractor. All three are weightlifters. Defendant and Luoma lived together for 3 or 4 years.

Defendant introduced her to Fashingbauer. In January 1986 Luoma started dating Fashingbauer. Defendant began calling Fashingbauer at his office. During one of these calls, in February, defendant threatened him, saying that Fashingbauer would have "to pay" for what he was doing. Contemporaneously, Luoma returned to her apartment one day, found some personal property missing and found a note from defendant. The note said, among other things, that defendant and Luoma's former husband knew about her relationship with Fashingbauer. The note closed by saying, "Dave, see you soon, pal." The next day Luoma obtained a restraining order directing defendant not to harass her anymore. Thereafter, so as not to violate the order, defendant communicated with Luoma indirectly by telling things to her former husband, knowing that he would pass them on to her. Her former husband testified that defendant called him a number of times in the 2 to 3 week period preceding the assault. In these calls defendant expressed his irritation that Luoma and Fashingbauer were dating and he said that, while he knew that Fashingbauer was bigger than he, he knew someone who could "take care" of him.

The assault occurred around 5:30 p.m. on March 20. Fashingbauer and Luoma spent the afternoon working out at a gym, then drove to pick up Luoma's daughter at a day care center located in a church in Columbia Heights in Anoka County. Fashingbauer remained at the wheel of the car with the engine running and the car still in "drive" in the church parking lot while Luoma went to get her daughter. Fashingbauer testified that defendant appeared suddenly, opened the door on the driver's side, put his hand on Fashingbauer's shoulder, and began verbally abusing him, accusing him of "ripping off" his house. Fashingbauer testified that he got out, pushing defendant's hand off as he did so, and told defendant he did not know what he was talking about. As Fashingbauer got out, the car moved forward until it hit a snowbank. Defendant pulled out a red-handled ratchet wrench and said to his brother, who was with him, "Come on, Rick, let's get him." Fashing-

bauer testified that he ran to the church door and was opening it when he felt a blow to the head and saw a white flash of light and some stars. When his legs gave out, he braced himself in a crouched position against the wall as he felt more blows being administered to his head. He recalled seeing two pairs of legs by him. After the assault ended, he got up, went into the church and told Luoma that defendant and Rick had gotten him and that she should call the police and an ambulance.

A police officer who arrived on the scene testified that it was "one of the more bloody scenes that I have ever seen." Police found a small broken-off piece of the ratchet wrench near the church. (Later after defendant was charged, defense counsel turned the rest of the ratchet wrench over to the state.)

Fashingbauer was taken to a hospital, where a plastic surgeon stitched up one large head cut, four good-sized ones, and several smaller ones. Fashingbauer subsequently received treatment from a chiropractor for a whiplash-type soft issue injury sustained when the blows were administered. An examination by a neurologist corroborated the chiropractor's diagnosis.

Defendant and his brother were arrested in Crystal shortly after 8:30 p.m. Both were well groomed and showed no signs of having been injured or even of having been in a fight. Both of them lied to the police, denying that they had been in Anoka County that day and claiming instead that they had been at a gym in Brooklyn Park between 5:00 and 8:30 p.m.

A couple days later, however, defendant bragged to the owner of a gym that Fashingbauer "took a swing at me and I beat the shit out of him."

At trial defendant admitted being involved in the incident but claimed that Fashingbauer was the aggressor. Specifically, defendant, his brother and a third party who was with them testified that defendant had discovered that his apartment had been broken into, that defendant thought Luoma had something to do with

it, and that he decided to swing by the day care center around 5:30 p.m. on the chance that he would see her there. They testified that Fashingbauer started the fight when he jumped out of the car and began swinging at defendant. They testified that the wrench dropped out of defendant's pocket, that Fashingbauer grabbed it and started swinging it at defendant, and that defendant took it from him and hit him with it a couple times in self defense.

In support of the defense theory that Fashingbauer was the aggressor, defense counsel tried to show that steroids that Fashingbauer was taking as part of his weightlifting training had made him aggressive. Fashingbauer readily admitted on cross-examination that he had used steroids off and on for a period of over 4 years, taking them whenever he was preparing specifically for a body building competition. He testified that 2 to 3 weeks before the incident he started taking 3 tablets a day of Anavar, an oral steroid, as part of his training for a weightlifting competition coming up that summer. He testified that he knew the effects steroids could have on one's moods and behavior, but that he himself was not a violent person and did not find that the steroids made him more aggressive or had any effect on his personality. Asked what other steroids he had taken over the 4 years he had been taking steroids, he mentioned Dianabol and Decadurabolin. Asked by defense counsel if he had ever taken steroids "intravenously with a needle," he said no,[1] and he also denied that Luoma had ever administered steroids to him with a needle. He admitted that some of the steroids he took were not obtained legally.

Defense counsel also briefly cross-examined Luoma about Fashingbauer's use of steroids. Specifically, defense counsel asked her if she had ever observed Fashingbauer use steroids and when. She said yes, that the first time was in June of 1986, after the incident in question.

Defense counsel called a leading expert on steroid use in sports, Dr. Robert Gold-man. He testified that many athletes become aggressive after taking steroids. Defendant, by the way, admitted that 3 years earlier he too had taken steroids.

The claim of failure to disclose exculpatory evidence is based on evidence that Luoma called the prosecutor, M. Katherine Doty, after Fashingbauer had testified but before Luoma testified, stating that Fashingbauer had committed perjury in his testimony about his steroid use. The trial court specifically stated in its order and memorandum denying post conviction relief that it did not credit Luoma's testimony at the post-conviction hearing but did credit that of Doty and of Fashingbauer. According to Doty, Luoma told her that Fashingbauer had committed perjury and that subsequent to the incident in question she herself had seen him take other steroids, specifically, Nerroboll and Parabolin. Doty testified that she told Luoma to tell the truth in her testimony and that in her opinion nothing that Luoma testified was inconsistent with what she told her in the phone conversation.

The trial court ruled that the prosecutor's failure to tell defense counsel about the conversation did not deprive defendant of a fair trial. The court based this on a number of factors, including (a) the fact that Luoma was also in contact with defendant himself before and during the trial and told defendant that to her knowledge Fashingbauer used at least three kinds of steroids, and (b) the fact that, as came out in testimony by defendant's trial counsel at the post-conviction hearing, the defense had reasons of its own for not going into this topic in any great detail in its cross-examination of Luoma.

The Court of Appeals in its opinion said that the prosecutor should have disclosed the contents of the telephone conversation to defense counsel and that the failure to disclose was prejudicial. *State v. Clobes*, 417 N.W.2d 735, 739–40 (Minn.App.1988).

We agree with the Court of Appeals that the prosecutor should have disclosed

---

**1.** At the postconviction hearing he admitted that he had taken steroids *intramuscularly*, but this was not inconsistent with his trial testimony that he had not taken them *intravenously*.

the contents of the conversation to defense counsel. The conversation did not show that Fashingbauer had lied about the drugs he was taking at the time of the incident in question but the conversation did suggest that he may not have told the truth when he testified that the only steroids other than Anavar that he had taken in his years as a weightlifter were Dianabol and Decadurabolin.

The issue then becomes whether the evidence was material exculpatory evidence in the sense that there is a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the trial would have been different. *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *State v. Renier,* 373 N.W.2d 282 (Minn.1985). If there is no reasonable probability that the outcome of the trial would have been different had the evidence been disclosed, then the Court of Appeals should not have ordered defendant a new trial.

In our opinion, the most that disclosure would have accomplished is that defense counsel would have questioned Luoma about her having seen Fashingbauer use Nerroboll and Parabolin in the summer of 1986, after the incident, information which would have impeached Fashingbauer's testimony that the only steroids other than Anavar that he had used were Dianabol and Decadurabolin. It is possible that the prosecutor then would have recalled Fashingbauer and he might have satisfactorily explained in some way his earlier answer on cross-examination. Even if his testimony about other steroid use had stood impeached, we find it hard to make the logical jump that that probably would have caused the jury to reject his testimony about the assault. The evidence that he was telling the truth about the assault was overwhelming (given defendant's threats to hurt him, defendant's motive, the nature of his injuries, his prompt report of the incident, defendant's lack of injury, defendant's lies to the police, and defendant's statement to the owner of a gym after the incident).

In conclusion, we hold that the prosecutor should have disclosed the evidence but that, on this record, her failure to do so does not justify the award of a new trial.

Reversed and judgment of conviction reinstated.