STATE of Minnesota, Respondent,

v.

Juan Breslel RAMOS, Appellant.

No. C9–92–696.

Court of Appeals of Minnesota.

Nov. 24, 1992.

Review Denied Jan. 15, 1993.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Linda K. Jenny, Asst. County Atty., Minneapolis, for respondent.

John M. Stuart, State Public Defender, Mark F. Anderson, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by DAVIES, P.J., and PARKER and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

Appellant Juan Breslel Ramos was found guilty by a jury of first degree criminal sexual conduct, first degree assault, and second degree assault. He appeals, contending he was denied a fair trial because of discovery violations by the prosecution.

## FACTS

The victim testified that Ramos entered her apartment, cut her neck with a knife, and raped her. Ramos denied the rape, testifying that he arrived at the victim's apartment after she had a fight with another man, that he inquired about the cut on her neck, determined that she was "okay," left the apartment, and then was arrested by police in the parking lot.

Ramos identifies two incidents at trial where testimony revealed information that had not been properly disclosed to him prior to trial. The first incident concerned testimony by the victim about a friend or relative of Ramos offering her money to drop the charges against him. This testimony was elicited initially by the defense attorney on cross-examination when he asked the victim if she knew Ramos's friend Eduardo Lopez. The victim asked if he was "a tall guy," the defense attorney said he thought so, and the victim responded, "Yeah, he came and tried to pay me off." The defense attorney thereupon discontinued this line of questioning.

On redirect examination, the prosecutor asked the victim whether she was pursuing the charges because the child protection agency threatened to take her children away if she did not. (The defense attorney had raised this issue on cross-examination.) The victim responded:

No, I'm not doing this because of child protection. I'm doing it because I could've been dead, and everybody want me to drop charges on him and want to pay me off, but I don't think—money ain't worth my life.

The prosecutor asked who had tried to pay her off, and she said that some tall guy who claimed to be Ramos's brother offered her $1500 to drop the charges.

On recross-examination, the defense attorney asked the victim whether she had ever mentioned the pay-off attempt to the police. She responded that she had not

because this is after the police came out when he had cut me and arrested him. Then, like two weeks after he was in jail, his brother came over there and tried to pay me off. He said he'd pay me $1,500 to drop charges on him so him and his brother can go to Las Vegas.

The defense attorney, attempting to impeach her, asked whether she had told anyone in the county attorney's office about the pay-off attempt prior to testifying at trial, and she testified that she had not.

The prosecutor then called Cindy Clarkson, who is employed by The Rape and Sexual Assault Center and works as an advocate for sexual assault victims in the county attorney's office and who interviewed the victim. The defense objected, arguing Clarkson's testimony would be more prejudicial than probative. The prosecutor advised the court that he had heard nothing of a pay-off attempt before the victim testified about it on cross-examination. He explained that after the victim testified, Clarkson told him that the victim had told her about the pay-off attempt. The prosecutor wanted Clarkson to testify in order to bolster the victim's credibility, which the defense attorney had called into question on cross-examination. The court allowed Clarkson to testify regarding the victim's prior consistent statement. Clarkson testified that some months prior to trial the victim telephoned her and told her that someone came to the victim's house and offered her money to drop the charges.

Ramos also complains about testimony from a forensic scientist, Mary Vogel of the Minnesota Bureau of Criminal Apprehension. On direct examination, Vogel testified that all of the tests she did to establish the presence of semen on the victim were negative. Vogel also testified that she examined Ramos' clothing for blood and semen, that there was no evidence of either, but that she tested his athletic

shorts for acid phosphatase, which is a chemical found in high concentrations in semen, and the result was a "weak positive". Information about the weak positive result for acid phosphatase was not in Vogel's written report given to the defense.

After Vogel's testimony, the defense moved for a mistrial or to strike Vogel's testimony, arguing the state's failure to disclose was a discovery violation. (At the same time, he argued that the state had committed a discovery violation by not disclosing the alleged pay-off attempt.) The prosecutor argued he had not known about the positive acid phosphatase result until just prior to trial. The court denied the motion for a mistrial but did strike the portion of Vogel's testimony dealing with the weak positive result for acid phosphatase. The court then instructed the jury as follows:

> I would like to direct you with respect to the testimony of Mary Margaret Vogel, the last witness, concerning the weak positive acetate phosphate results on defendant's shorts and presence of weak acid phosphatase results which should be disregarded, and any conclusions that she made in that connection or appeared to make about the presence of semen on the shorts must also be disregarded by you.

The court did not specifically rule on Ramos' argument that the state violated discovery rules by not disclosing the alleged pay-off attempt. The court explained it had already ruled on the admissibility of the pay-off testimony by addressing Ramos' argument that it was more prejudicial than probative.

Ramos contends that the state committed discovery violations by not informing him of the victim's claim that someone tried to pay her off or of Vogel's positive acid phosphatase result, and that these violations denied him a fair trial.

## ISSUE

Did the state commit discovery violations denying Ramos a fair trial?

## ANALYSIS

■ 1. Ramos first argues that the victim's statement to her sexual assault counselor that a friend or relative of Ramos had offered her money to drop the charges should have been disclosed to him pursuant to Minn.R.Crim.P. 9.01 subd. 1(2). Rule 9.01 subd. 1(2) provides that the prosecutor shall disclose

> any relevant written or recorded statements which relate to the case within the possession or control of the prosecution, the existence of which is known by the prosecuting attorney, and shall provide defense counsel with the substance of any oral statements which relate to the case.

The prosecutor must disclose any of this information which is

> in the possession or control of members of the prosecution staff and of any others who have participated in the investigation or evaluation of the case and who either regularly report or with reference to the particular case have reported to the prosecuting attorney's office.

Minn.R.Crim.P. 9.01 subd. 1(7).

Ramos argues that since Clarkson was associated with the prosecutor's office as an advocate for sexual assault victims, it was the prosecutor's duty to ensure that information Clarkson possessed about the alleged pay-off attempt was disclosed to the defense, even though the prosecutor himself was unaware of it.

■ Although it is arguable that the prosecutor had a duty, under Rule 9.01 subds. 1(2) and 1(7), to disclose to the defense the victim's statement to Clarkson, we conclude that the trial court did not err in refusing to grant a new trial or otherwise sanction the state. The imposition of sanctions for the violation of a discovery rule is a matter for the sound discretion of the trial court. *State v. Lindsey,* 284 N.W.2d 368 (Minn.1979). In exercising this discretion the trial court should take into account the reason disclosure was not made, the extent of prejudice to the opposing party, the feasibility of rectifying the prejudice by a continuance, and any other relevant factors. *Id.* This court must de-

cide if the trial court's failure to sanction was a clear abuse of discretion. *State v. Daniels*, 332 N.W.2d 172, 179 (Minn.1983).

■ Ordinarily, if the prosecutor violates a discovery rule, a new trial should be granted if there is a reasonable probability that had the evidence been disclosed to the defense, the outcome of the trial might have been different. *State v. Clobes*, 422 N.W.2d 252, 255 (Minn.1988). Generally, a new trial should be granted only if the defendant was prejudiced by the state's failure to comply with discovery rules. *State v. Dye*, 333 N.W.2d 642, 644 (Minn. 1983). However, in the appropriate case, a new trial may be granted even if a traditional showing of prejudice is not made. *State v. Kaiser*, 486 N.W.2d 384 (Minn. 1992).

In light of the foregoing standards, we conclude that the trial court did not abuse its discretion in denying the motion for a new trial. We deem it significant that the prosecutor was not aware of the statement and did not question the victim or Clarkson about it until the defense brought it out on cross-examination.

In *Kaiser* the prosecutor was aware of the exculpatory information in question several days before trial and failed to tell the defense. *Kaiser,* 486 N.W.2d at 386. The supreme court found it significant, in *Kaiser,* that the prosecutor otherwise obstructed defense attempts to question the victim and other witnesses and that, in closing, the prosecutor based his argument on evidence that would have been contradicted by the exculpatory information that was not disclosed, thereby exploiting the effects of its nondisclosure. *Id.* at 387.

In this case, the prosecutor was unaware of the information until the victim testified about it on cross-examination, and there is no evidence that the prosecutor intentionally obstructed attempts by the defense to obtain the information or exploited the effects of its nondisclosure.

■ 2. Ramos also contends that the prosecutor's failure to disclose Vogel's acid phosphatase test results denied him a fair trial. The prosecutor became aware of the weak positive result for acid phosphatase just prior to trial and should have disclosed the information to the defense and to the court at that time. *See* Minn.R.Crim.P. 9.01 subd. 1(4). We believe, however, the trial court's action in striking the portion of Vogel's testimony concerning the positive acid phosphatase result and the court's ensuing curative instruction to the jury sufficiently reduced the chance of prejudice to Ramos so that a new trial is not warranted.

### DECISION

Affirmed.