**STATE of Minnesota, Respondent,**

v.

**Raymond Buster HUNT, petitioner, Appellant.**

**No. C5–99–72.**

Supreme Court of Minnesota.

Aug. 3, 2000.

John M. Stuart, State Public Defender, Sharon E. Jacks, Asst. State Public Defender, Lawrence Hammerling, Deputy State Public Defender, Minneapolis, for appellant.

Michael Hatch, Atty. Gen., St. Paul, Charles E. MacLean, Winona County Atty., Steve L. Schleicher, Asst. Winona County Atty., Winona, for respondent.

## OPINION

LANCASTER, Justice.

Appellant Raymond Buster Hunt (Hunt) was convicted in Winona County District Court of four counts of controlled substance crimes.[1] Because the prosecution did not disclose to defense counsel until after the jury returned its guilty verdicts that a psychologist who examined the state's primary witness pursuant to Minn. R.Crim. P. 20.01 had determined that the witness was incompetent to stand trial, we reverse appellant's conviction and remand for a new trial.[2] We also conclude that the prosecution's closing argument included comments that, while of questionable pro-

---

1. The state alleged two counts of conspiracy to commit controlled substance crime in the first degree, in violation of Minn.Stat. §§ 152.021, subds. 1(1), 3(b), 152.096, subd. 1, 609.175, subd. 2 (1998); one count of controlled substance crime in the first degree, in violation of Minn.Stat. §§ 152.021, subds. 1(1), 3(b), 609.05 (1998); and one count of controlled substance crime in the fourth degree, in violation of Minn.Stat. §§ 152.024, subds. 1(1), 3(b), 152.01, subd. 15a(2) (1998).

2. Minn. R.Crim. P. 20.01 provides in part:
   Subd. 2. If during the pending proceedings, the prosecuting attorney, defense counsel or the court has reason to doubt the competency of the defendant, then the prosecuting attorney or defense counsel by mo-

tion or the court on its initiative shall raise that issue.
\* \* \* \*
(3) The court shall appoint at least one examiner \* \* \* to examine the defendant and to report to the court on the defendant's mental condition. \* \* \*
(4) At the conclusion of the examination, a written report of the examination shall be forwarded to the judge who ordered the examination, and the judge shall cause copies of the report to be delivered forthwith to the prosecuting attorney and to defense counsel. The contents of the report shall not be otherwise disclosed until the hearing on the defendant's competency.

priety, do not in themselves warrant a new trial.

The primary witness against Hunt at trial was Jonathan Schalow. Schalow was a government informant who met Hunt in jail in December of 1997. On or about December 22, at the direction of another inmate, Schalow approached law enforcement officials and offered to purchase cocaine from Hunt. Schalow then reported to authorities that Hunt had told him earlier in the day that Hunt could "reach out from in here" (jail) to sell Schalow crack cocaine upon Schalow's release. Law enforcement officials arranged for Schalow's release that same day. Once released, Schalow telephoned a juvenile who Hunt had said could supply Schalow with drugs. Schalow purchased several grams of crack cocaine from the juvenile, but police officers decided not to arrest the juvenile at the time for fear it would end their investigation of Hunt.

On January 1, 1998, Schalow was again arrested and jailed. Schalow immediately contacted the police and offered to make another purchase of cocaine from Hunt, who had since been released from jail. Police officers recorded Schalow's telephone conversation with Hunt, who promised that even if he did not have the drugs by the prearranged time, he would still meet Schalow to arrange a later delivery time. At the appointed hour and place, police officers observed a man who appeared to be looking for someone. They approached the man and identified him as Hunt.

According to the officer's testimony, Hunt stated that he was on his way to an area motel to meet a friend named "John" whose last name he did not know, and denied being there to sell drugs. Hunt did not have any contraband on him when the police officers arrested him. However, Hunt was carrying a piece of paper with Schalow's telephone number written below the word "Crank," Schalow's nickname. Subsequently, during two interviews, Hunt variously admitted and denied that his was the voice in the taped calls speaking to Schalow. Hunt was charged with one count of controlled substance crime in the first degree, one count of controlled substance crime in the fourth degree, and two counts of conspiracy to commit controlled substance crime in the first degree.

Schalow remained in jail after he set up the second controlled drug purchase. In March 1998 he attempted suicide. Shortly thereafter the prosecutor in Hunt's case decided to depose Schalow for fear he would not survive to testify. Defense counsel was present at the deposition.

In advance of his own and Hunt's trial, Schalow moved for an examination pursuant to Minn. R.Crim. P. 20.01 to determine if he was competent to stand trial. By an order dated July 9, 1998, the court in Schalow's case granted that motion. Schalow was examined by a psychologist on July 15, 1998.

Hunt's trial began on Monday, August 3, 1998. The state does not dispute the characterization of Schalow as its key witness at trial. At Hunt's trial, Schalow testified to his jailhouse discussion with Hunt about buying drugs; that Hunt said he could set a deal up from inside the jail; that Schalow bought drugs from Hunt's alleged co-conspirator while Hunt remained in jail; and that Schalow was again arrested and jailed and then set up a second deal with Hunt to secure his own release from jail. On cross-examination, Hunt attempted to establish that Schalow violated his agreement with law enforcement to act as a confidential informant, and threatened not to testify, or if he did testify to lie on the stand. No mention was made of Schalow's July 15 competency examination during Hunt's trial.

On Wednesday, August 5, 1999, the day before final arguments and the commencement of jury deliberations in Hunt's trial, the prosecutor's office received the psychologist's report from Schalow's Rule 20.01 examination, in which the psychologist concluded that Schalow was not com-

petent to stand trial. The prosecutor in Hunt's case apparently did not focus his attention on the report that week.

The jury returned guilty verdicts on all four counts on the afternoon of Thursday, August 6. By the following Monday, the prosecutor had digested the contents and appreciated the significance of the psychologist's report from Schalow's Rule 20.01 evaluation. At that point the prosecutor informed Hunt's counsel that she should bring a discovery motion to obtain the results in order to preserve the record for appeal.

Hunt then moved to compel discovery, to dismiss, for judgment of acquittal, and for a new trial. Meanwhile, the court in Schalow's case ordered an adverse competency evaluation. The court in Hunt's case observed that nothing "raised a red flag" during Schalow's testimony in Hunt's case with respect to Schalow's competency. Nonetheless, the court withheld ruling on Hunt's motions until the adverse Rule 20.01 examination of Schalow was completed.

After this second competency evaluation, conducted in September 1998, the examining psychologist reported his conclusion that Schalow was competent to assist in his own defense. At the same time the court received that information, it also received an affidavit signed by Schalow stating that he had deliberately tricked the first examiner into thinking that Schalow

was incompetent. He did this, he said, because he was going to be returned to custody in Wisconsin where authorities insisted on incarcerating him alongside prisoners against whom he had testified, and he feared for his safety.

Hunt then added to his post-trial motions a request for a new trial based on newly discovered evidence, specifically the affidavit. The trial court denied Hunt's motions and the court of appeals affirmed.[3] Hunt then appealed to this court. Here, Hunt alleges a discovery violation in the state's failure to disclose Schalow's competency examination and prosecutorial misconduct in closing argument.

## I.

We first decide this question: When the state receives information that a psychologist conducting an examination pursuant to Minn. R.Crim. P. 20.01 has determined that the state's key witness is incompetent to stand trial, must that information be disclosed to the defense? We hold that it must.

The state's obligations in discovery derive from the Minnesota Rules of Criminal Procedure and also from the constitutional guarantees of due process. The rules require the prosecuting attorney to allow the defense access to "all matters * * * which relate to the case" and specifically require disclosure of any material in the possession or control of members of the prosecution staff.[4] Minn. R.Crim. P. 9.01, subd. 1(7).[5]

**3.** Hunt argued two discovery violations before the postconviction court as grounds for a new trial: the failure by the state to inform the defense about the impending Rule 20 evaluation, and the state's receipt and nondisclosure of the evaluation results during trial. The court found no discovery violation and denied Hunt's motions. Hunt then argued to the court of appeals that newly discovered evidence, in the form of Schalow's affidavit, required reversal of the postconviction court's denial of Hunt's motions. This also proved unsuccessful. In his petition for review, Hunt reiterated the discovery violations as grounds for relief and fully briefed the issue in the context of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Counsel for the state, the same counsel during all

stages of this case, filed his brief before receiving Hunt's (the petitioner's) brief, and therefore did not directly address *Brady*. At oral argument counsel for the state argued that any *Brady* violation was waived because of Hunt's failure to assert it before the court of appeals. We believe that the issue was sufficiently presented to the court of appeals in the form of Hunt's newly discovered evidence argument and counsel for the state suffered no prejudice as he was aware of the discovery argument since the beginning of the postconviction proceedings.

**4.** The prosecutor in Hunt's case acknowledged at oral argument that he knew the Rule 20.01 report was received in his office before the jury returned a verdict but stated that he

■ The constitutional guarantees of due process also require disclosure. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Since *Brady,* the Court has expanded the disclosure obligation to include impeaching information. *See United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). The duty to disclose such evidence exists even where there has been no request by the accused, *see United States v. Agurs,* 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and the remedy for a *Brady* violation is a new trial, *see Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Hunt argues here that the state was required to inform the defense of the results of Schalow's competency evaluation and that the failure to do so warrants a new trial.

■ *Brady* disclosure applies only to material evidence. *See Brady,* 373 U.S. at 87, 83 S.Ct. 1194. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley,* 473 U.S. at 682, 105 S.Ct. 3375. Recently the Court described the "three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

■ We conduct a similar, but not identical, inquiry under the Minnesota Constitution. We have at times followed a harmless error analysis for undisclosed evidence, not granting a new trial where the evidence could not in any reasonable likelihood have affected the judgment of the jury.[6] *See State v. Poganski,* 257 N.W.2d 578, 579–80 (Minn.1977); *see also State v. Clobes,* 422 N.W.2d 252, 255 (Minn.1988). We consider, then, whether evidence that Schalow was found incompetent to stand

did not learn that Schalow had been deemed incompetent by the first examining psychologist until after the jury returned its verdict. Our inquiry, however, is not limited to Hunt's prosecutor; instead, knowledge and disclosure responsibility is imputed to the entire Winona County Attorney's Office, which was responsible for prosecuting both cases. *See* Minn. R.Crim. P. 9.01, subd. 1(7). Therefore, the duty to disclose the Rule 20.01 results fell immediately to the entire prosecution office, regardless of when Hunt's prosecuting attorney learned of the evaluation result.

5. Minnesota Rule of Criminal Procedure 9.01, subd. 1, provides:

> Without order of court and except as provided by Rule 9.01, subd. 3, the prosecuting attorney on request of defense counsel shall, before the date set for Omnibus Hearing provided for by Rule 11, allow access at any reasonable time to all matters within the prosecuting attorney's possession or control which relate to the case and make the following disclosures:

\* \* \* \*

> (7) The prosecuting attorney's obligations under this rule extend to material and information in the possession or control of members of the prosecution staff and of any others who have participated in the investigation or evaluation of the case and who either regularly report or with reference to the particular case have reported to the prosecuting attorney's office.

6. However, we have also granted a new trial in the interests of justice without a showing of prejudice. *See State v. Kaiser,* 486 N.W.2d 384, 386 (1992) ("Our cases require much more of the prosecution than the federal cases require and do not always insist on a traditional showing of prejudice in order to justify a new trial."); *State v. Hall,* 315 N.W.2d 223, 225 (Minn.1982); *State v. Schwantes,* 314 N.W.2d 243, 245 (Minn.1982); *State v. Zeimet,* 310 N.W.2d 552, 553 (Minn.1981). Thus, we will reverse a conviction even without prejudice in the exercise of our supervisory power over the trial court and in the interests of justice. *See Kaiser,* 486 N.W.2d at 386.

trial could have affected the judgment of the jury.

■ The state correctly notes that the standard for competency to stand trial at which the Rule 20.01 evaluation is aimed is a different standard than the standard for witness competency. If a witness understands the obligation of an oath and is capable of correctly relating the facts to which the testimony relates, the witness is competent. *See State ex rel. Dugal v. Tahash,* 278 Minn. 175, 177–78, 153 N.W.2d 232, 234 (Minn.1967). In contrast, if the defendant "(1) lacks sufficient ability to consult with a reasonable degree of rational understanding with defense counsel; or (2) is mentally ill or mentally deficient so as to be incapable of understanding the proceedings or participating in the defense," the defendant is incompetent to stand trial. Minn. R.Crim. P. 20.01, subd. 1.

■ Notwithstanding the differences between witness competency and competency to stand trial, the fact that a witness has been determined to be incompetent to stand trial by an examining psychologist should seriously concern the prosecution about that individual's fitness to testify as a witness. A court's finding of incompetency under Rule 20.01 reflects a determination that the subject lacks the capacity to understand criminal proceedings or is mentally ill or deficient. The determination of a mentally ill person's competency to testify is usually made only after the court's preliminary examination of the witness. *See State v. Berry,* 309 N.W.2d 777, 782 (Minn.1981); *Tahash,* 278 Minn. at 177, 153 N.W.2d at 234. This procedural safeguard reflects our concern with the integrity of the presentation of evidence at trial. Only where the trial court is satisfied that the witness, despite a mental illness, understands the obligation of the oath and can relate the facts to which the testimony relates will the court allow the witness to testify. *See Tahash,* 278 Minn. at 177, 153 N.W.2d at 234. While we are concerned here with a psychologist's con-

clusion (rather than a court finding) that Schalow was incompetent to stand trial, the prosecution still had access to clearly impeaching evidence, and was thus obligated under *Brady* to disclose.

■ Nonetheless, the state maintains that the prejudice requirement of *Brady* is not met in this case. The state argues that Hunt cannot establish that he was prejudiced by not knowing that one of the state's witness had been determined by a psychologist to be incompetent to stand trial, when that witness was ultimately found by the court to be competent.

With the benefit of hindsight, there were events that happened after the undisclosed examination results came to the prosecutor's office that decreased the significance of the nondisclosure (the second examination and a court finding of competence). There were also events that *increased* the significance of the nondisclosure (Schalow's affidavit showing that he had lied to manipulate his psychological examination). We cannot say what might have occurred on a reopened cross-examination of Schalow if he had been questioned about the examination. However, at a minimum, we are convinced that had Schalow's competency report come to the attention of the trial court, the presiding judge would have been compelled to independently ascertain Schalow's competency as a witness. *See Berry,* 309 N.W.2d at 782. Had Schalow been deemed competent to testify, this new information would likely have given defense counsel new grounds for cross-examination regarding his mental stability and perhaps his ability to mislead. *See, e.g., United States v. Skorniak,* 59 F.3d 750, 755 (8th Cir.1995) (noting that defense's ability to fully cross-examine prosecution witness about his psychological problems mitigated court's refusal to order a psychological examination of the witness).

Nondisclosure of evidence that is merely impeaching may not typically result in the kind of prejudice necessary to warrant a

new trial. For example, where testimony of the witness sought to be impeached by nondisclosed evidence "was not the only damning evidence against defendant," we have determined that the likelihood of prejudice is decreased. *State v. Jackson*, 346 N.W.2d 634, 638 (Minn.1984). In this case, however, the state concedes that its case rested largely on the testimony of Schalow. Hunt's cross-examination of Schalow exposed his threat to lie on the stand, but did not impugn his ability to accurately and honestly relate facts the way that the competency evaluation results would have. Where the nondisclosed evidence could have significantly impeached the state's key witness, regardless of subsequent developments with that evidence, we conclude that the defendant has suffered prejudice from the nondisclosure. *See Giglio*, 405 U.S. at 154–55, 92 S.Ct. 763 (holding government's failure to disclose impeaching evidence regarding only witness to crime is prejudicial).

The state argues that it should not be required to disclose results of a Rule 20.01 evaluation because those results are not public and must be kept in confidence by the recipient.[7] We do not underestimate the importance of the subject's privacy interests in the results of a psychological evaluation. Further, the prosecutor may have had a legitimate concern regarding disclosure. However, the privacy protection that attaches to Rule 20.01 psychological reports does not require the state to sit silently while in possession of a report concluding that its main witness has been determined by a psychologist to be incompetent to stand trial. When the prosecutor's office received the results of Schalow's first competency evaluation, the integrity of Scha-

low's testimony against Hunt became highly suspect. The state was required to do immediately what it did here posttrial: request that the defense make a proper motion and bring the matter to the court's attention so that the court could protect Schalow's privacy interests to the extent feasible.

While we are satisfied that the prosecution acted in good faith, Schalow's examination should have been disclosed to the defense. Given his critical importance to the state, we cannot say that this evidence could not in any reasonable likelihood have affected the judgment of the jury. *See Poganski*, 257 N.W.2d at 579–80. Accordingly, Hunt is entitled to a new trial.

II.

As we are remanding this case for a new trial, we will also address certain of Hunt's prosecutorial misconduct claims. *See State v. Post*, 512 N.W.2d 99, 103 (Minn. 1994) (cautioning prosecutor against repeating improper arguments on retrial).

■■■ Hunt argues that the prosecutor's closing argument denied him a fair trial by misinforming the jury of the state's burden of proof and by improperly attacking Hunt's voice-identification expert, and the trial court, acting as postconviction court, therefore erred in not granting Hunt a new trial on this ground. A postconviction court's decision will not be disturbed except upon an abuse of discretion. *See Gustafson v. State*, 477 N.W.2d 709, 712 (Minn.1991) (quoting *State v. Bliss*, 457 N.W.2d 385, 391 (Minn.1990)).

■■■ A defendant alleging prosecutorial misconduct generally will not be granted a new trial if the misconduct was

---

7. We acknowledge a federal court's application of a public record exception to *Brady*. *See United States v. Jones*, 34 F.3d 596, 600 (8th Cir.1994). Applying such an exception in this case, however, would not dispose of the issue. The fact that Schalow was the subject of a competency evaluation was a matter of public record, and could have been discovered by defense counsel, especially

since the defense knew that Schalow was being prosecuted. The results of Schalow's competency evaluation, however, were not a matter of public record. Hunt's counsel could not have possibly known the *results* of the evaluation during the trial, as the confidentiality of the evaluation report was protected by Minn. R.Crim. P. 20.01, subd. 2(4).

harmless beyond a reasonable doubt. *See State v. Atkins*, 543 N.W.2d 642, 648 (Minn.1996). Further, whether prosecutorial misconduct was harmless depends partly upon the type of misconduct committed. *See State v. Caron*, 300 Minn. 123, 127, 218 N.W.2d 197, 200 (1974). For serious prosecutorial misconduct, the misconduct is harmless beyond a reasonable doubt if the verdict rendered was surely unattributable to the error. *See State v. Ashby*, 567 N.W.2d 21, 28 (Minn.1997). For less serious misconduct, the test is whether the misconduct likely played a substantial part in influencing the jury to convict. *See Caron*, 300 Minn. at 128, 218 N.W.2d at 200.

▇▇▇▇ Hunt contends that the prosecutor twice used a misleading analogy that suggested the state's burden of proof was not beyond a reasonable doubt but a mere preponderance of the evidence. Misstatements of the burden of proof are highly improper and would, if demonstrated, constitute prosecutorial misconduct. *See State v. Coleman*, 373 N.W.2d 777, 782 (Minn.1985). However, Hunt's counsel did not object to the analogy made by the prosecutor in his closing argument. *See Atkins*, 543 N.W.2d at 647 (noting that failure to object to prosecutor's statement forfeits defendant's right to have issue reviewed on appeal). In the absence of a timely objection, we review the claim under the plain-error rule, asking whether the alleged conduct was so clearly erroneous under applicable law and so prejudicial to the defendant's right to a fair trial that the defendant's right to a remedy should not be forfeited. *See Rairdon v. State*, 557 N.W.2d 318, 323 (Minn.1996).

In closing argument the prosecutor made an analogy to the ancient Greek juries, the substance of which implied that Greek juries would place a stone on either side of a scale for each successful argument by one party or the other.[8] We agree with the court of appeals that the prosecutor's analogy to the Greek jury, although questionable, does not rise to the level of plain error. The prosecutor stated the appropriate burden of proof in his closing argument, and the trial court also properly instructed the jury on the state's burden of proof and told the jury to disregard any statements by the attorneys to the contrary. Given that both the prosecutor and the trial court instructed the jury on the correct burden, the prosecutor's conduct did not deny Hunt his right to a fair trial. Nonetheless, the analogy was arguably confusing and should not be repeated should Hunt be retried.

Concluding that the state violated the discovery rules by failing to timely disclose the results of a competency evaluation of its key witness, and that this nondisclosure prejudiced Hunt, we reverse Hunt's convictions and remand for a new trial.

Reversed and remanded.

---

8. According to one authority, a juror (*dikast*) in ancient Greece actually used a slightly different method of tallying his vote in a trial. "The verdict was given by each *dikast* depositing in one of two urns a bean, pebble or brass ball, indicative of his verdict." Maximus A. Lesser, *The Historical Development of the Jury System* 24 (1894) (*citing* William Forsyth, *Hortensius: The Advocate* 33–34 (1849)).